DAVIS ET AL., APPELLEES, *v.* COMMERCIAL CREDIT CORP., APPELLANT.

312

(No. 2371—Decided February 3, 1950.)

*Mr. James W. Anderson* and *Mr. Frank T. Bow,* for appellees.

*Mr. Clayton Hoffman* and *Mr. Willis J. Grant,* for appellant.

MONTGOMERY, P. J. The action in the Court of Common Pleas was brought by the plaintiffs, appellees herein, John J. Davis and Mary Davis, against Commercial Credit Corporation, H. S. Black, William J. Ross and Arthur W. Cox. No service of summons was had upon the defendants Black and Ross and the fair inference is that they "fled the realm" and could not be found. The defendant Cox was the local office manager of the defendant Commercial Credit Corporation. The verdict of the jury was against the corporation in the sum of $700, and there was no finding made as to the defendant Cox. From the judgment entered upon the verdict the Commercial Credit Corporation perfected this appeal.

On November 29, 1946, the plaintiffs had executed and delivered to Union Construction Company a contract for the residing of the outer walls of their dwelling house with white asbestos siding, for the sum of $1,040. The Union Construction Company was the name under which Black was doing business and Ross was Black's agent.

On the back of the contract form the following statement appeared:

"Owner to receive $25 for any jobs sold directly or indirectly through home."

On the same date, the plaintiffs executed what was termed an "FHA Title 1 Credit Application," a promissory note, and what was termed as "FHA Title 1 Borrower's Completion Certificate."

FHA is the designation ordinarily accorded to a certain governmental alphabetical agency.

An exact copy of the promissory note in question is as follows:

"PROMISSORY NOTE

"524716      No. 256-118

"2306 15th N.E.    Canton    Ohio    Nov. 29, 1946.

"Undersigned, jointly and severally, promise to pay to Union Construction Co., seller, or order, the sum of eleven hundred ninety-five dollars 79/100 dollars ($1,195.79) in 36 consecutive monthly instalments of $33.22 each (except that the final instalment shall be the difference between the amount of this note and the sum of the preceding instalments), the first to become due Jan. 14, 1946, balance of instalments to be paid on the same date of each month thereafter until paid, at the office of Commercial Credit Corporation, at Canton, Ohio, with interest after maturity of entire balance as herein provided at the highest legal rate.

"Undersigned hereby waive presentment, protest, and notice of protest and all benefit of valuation, appraisement and homestead or other exemption laws, and agree to pay all expenses incurred in collection, including 15% of the amount hereof as attorneys' fees if placed with an attorney for collection after default. If any instalment hereof is not paid when due, the total amount owing herein shall become immediately due and payable at the option of the holder hereof. Under-

signed agree to pay authorized F. H. A. "late charges" (5c per $1, maximum $5) on any instalment more than 15 days past due.

"Value Received.                      John J. Davis
                                      Mary Davis
"Form 1169 A                          6-46-400M"

This note, except for the names of the parties, the amount of the note, the amount of the monthly installments and the addresses, was on a printed form, which printed form recited on its face that the same was to be paid "at the office of Commercial Credit Corporation at Canton, Ohio."

On the back of the note there was an assignment by "Union Construction Co., H. S. Black, owner," but this assignment followed a printed form in this language: "Without recourse pay to the order of Commercial Credit Corporation."

The difference between the contract price of $1,040 and the amount of the note of $1,195.79 is listed on a statement by Commercial Credit Corporation, plaintiffs' exhibit C, as "discount charges $155.79."

The note, but not the other papers, was assigned to Commercial Credit Corporation on November 30, 1946, the day following the execution of the note. Shortly thereafter the makers of the note received notice from Commercial Credit Corporation that it was the owner of the note, of which fact they had not been advised theretofore, and shortly thereafter they paid to Commercial Credit Corporation the amount of the note as then due. Thereafter they brought this suit in the Court of Common Pleas.

The claim of the plaintiffs was that Commercial Credit Corporation and Cox had conspired with Black and Ross to cheat and defraud these plaintiffs and that the same was shown by the manner in which signatures were obtained on the various instruments, by

the purchase under the existing circumstances of the note, and by the representation by Commercial Credit Corporation that it was a holder in due course of the note.

The defense was that the note had been paid, and that previously thereto it had been purchased by the corporation from Black for a valuable consideration, before maturity, and without notice of defects.

As hereinbefore stated, upon the issues thus made, the cause went to trial and there was a verdict of $700 for the plaintiffs, upon which judgment was entered. From such judgment this appeal was perfected.

Appellant properly says that these two questions are raised in this case:

(a) Were Commercial Credit Corporation and Cox engaged in a conspiracy to defraud these plaintiffs and other borrowers?

(b) Was the Commercial Credit Corporation at the time it purchased the note in question, a holder in due course, as defined by Section 8157, General Code?

To the first question we unhestitatingly answer "yes." To the second question we with equal lack of hesitation answer "no."

The original defendant Black had been engaged in different cities in installing asbestos siding upon houses, particularly in Erie, Pennsylvania. There he had been charged with doing inferior work and with inducing home owners to sign contracts and notes with agreements of $25 credits, as in the instant case.

Before the execution of the instruments signed by the plaintiffs herein, the defendant Commercial Credit Corporation had knowledge of the history of Black's performances in Erie, Pennsylvania, and it had knowledge at least a week before the purchase of the Davis paper of at least one other case in the city of Canton, wherein the claim had been made of fraud on the part

of Black through his agents and the special contract involving $25 credit.

It is true that the defendant corporation is a Maryland corporation and that the one which financed Black's operations in Erie was a Pennsylvania corporation. But the record is clear that both of them were subsidiaries of a concern known as Commercial Credit Company, of which one James Bennett was general or division manager, with his offices in Cleveland; that he had supervision over both these corporations; and that with knowledge of what had happened in Erie he authorized Cox to proceed with the arrangement with Black in Canton.

Cox, as local manager, had information as to complaints already made in Canton, so that knowledge had been brought, before the alleged purchase of the Davis note, of defective work, of fraudulent representations and of the general nature of Black's operations both in Erie and in Canton.

The corporation supplied Black with the printed forms, which were long documents containing credit statements, promissory notes and completion statements, and Black or his agents would represent to the signers of these agreements that they would be reimbursed, if the contracts were signed, by allowances to them for holding their property out as "bait for other suckers."

There can be no question in the minds of the members of this court as to the fraudulent operation and as to the knowledge of the Commercial Credit Corporation of those facts.

Of course, in a charge of conspiracy the basis of action must be more than the conspiracy itself. There must be resultant damage, and such did result in the instant case. Here there was concerted action on the part of Black and the corporation to accomplish a

fraudulent result, beneficial to each of them, and as the result thereof the damage did ensue to the plaintiffs.

The verdict of $700 on which judgment was rendered was under the evidence a fair assessment of the damages sustained as the result of this conspiracy, and upon this evidence we will touch briefly.

Appellant contends that under Section 8157, General Code, and the evidence in this case it is entitled to be regarded as a holder in due course, on the theory that it took the note in good faith and for value, without notice of infirmity or defect in the title of Black. We have hereinbefore stated the factual situation as to this knowledge.

But the legal proposition is answered by Section 8161, General Code, which is:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating it, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

Under the facts shown by the record and which we have epitomized in this opinion, the appellant must be held to have had actual knowledge, such that its action in taking the instrument amounted to bad faith, and consequently it cannot claim the benefit of the due-course statute, Section 8157, General Code.

While it is common knowledge that in recent years there has been a tremendous amount of transactions similar to this one throughout the United States, there has so far been a dearth of authority controlling the proposition under such facts.

The nearest approach to it which we have found or which has been suggested by counsel is that in the case of *Commercial Credit Co.* v. *Childs,* 199 Ark.,

1073, 137 S. W. (2d), 260, 128 A. L. R., 726, the first paragraph of the A. L. R. headnotes of which is:

"1. A finance company which had prepared and delivered to an automobile dealer forms of notes and conditional sales contracts bearing a printed form of assignment to itself, and which, on the day of the sale of a car by the dealer, took an assignment of the sales contract and purchaser's note, is to be regarded as a party to the transaction against whom the defense of fraud and misrepresentation may be made, rather than as an innocent purchaser for value before maturity."

And attention may be directed to the annotations in the A. L. R. report.

Certainly, this was a magnificient setup for the appellant: A piece of work worth, according to some of the evidence, $390, but in any event not much more than that, with a note given in advance of the work for $1,040, with added carrying charges to the extent of $155.79, with a guarantee by FHA if there should be default by the makers of the note and if the corporation should have advanced too much money.

To claim good faith under such a situation seems to us to pass the bounds of all hope of any belief.

Now, briefly, as to the evidence. It is contended that the court erred in admitting the evidence offered as to the value of the work. We see no error in the admission of such evidence. In particular complaint is made of the fact that a building permit issued by the city of Canton was admitted, which set forth the amount of the proposed improvement as $390, and the complaint is made that the jury obviously accepted this amount, deducted it from the contract price and rendered a verdict for $700. Why should not this have been done? The application was made by Black as the proposed contractor, and in view of our conclusion as to the con-

spiracy between him and the appellant, there could be no better or more potent evidence on behalf of the plaintiffs. We have considered the objections to the charge and the failure to give the special requested charges. We see no error in that respect. In fact, we see no error in this record.

Here, in brief, is a situation wherein a so-called "fly by night" contractor, doing inferior work, conspired with a credit corporation to take his paper for the purpose of collecting its full face, on the theory that the corporation was a holder in due course. Here the amount of the damage sustained by the plaintiffs was set forth with reasonable certainty and the verdict and judgment were just and right. The judgment is affirmed.

*Judgment affirmed.*

McClintock and Putnam, JJ., concur.