Federal Credit Bureau, Inc., Respondent, *v.* Zelkor Dining Car Corporation, Appellant.

First Department, June 2, 1933.

*Edward I. Wechsler* of counsel [*Joseph J. Mintzes* with him on the brief; *Schmer & Wechsler*, attorneys], for the appellant.

*Stanley H. Fuld* of counsel [*Frank Aranow*, attorney], for the respondent.

MERRELL, J.  This action was brought by plaintiff upon an assigned promissory note made by the defendant, payable to the order of Neon Tube Sign Corporation, for $858, payment thereof to be made in thirty-three monthly installments of $26 each.  After a trial in Municipal Court the jury rendered a verdict in favor of defendant, upon which judgment was entered dismissing the complaint.  On appeal by plaintiff to the Appellate Term, First Department, that court reversed the judgment entered in favor of the defendant and directed judgment for plaintiff.

The facts are not in dispute, and the only questions involved upon this appeal are questions of law.  On January 26, 1929, Neon Tube Sign Corporation and the defendant entered into a rental agreement whereby the said Neon Tube Sign Corporation agreed to install a Neon tube sign in the premises of the defendant and to lease the same to the defendant for the period of thirty-six months, " commencing upon the day the sign shall be installed and ready for operation and ending at midnight of the last day of the term 36 months thereafter," at a rental of " $26.00 per month in advance for each and every calendar month during the term of this lease, and shall be evidenced by a promissory note."  At the bottom of such rental contract the promissory note in suit appeared.  The two instruments were merely separated by perforations in the paper upon which they were drawn, the rental agreement and promissory note consisting of but one sheet of paper, and both were signed by the defendant at the same time and place and constituted a single instrument.  Several payments were made by the defendant to Neon Tube Sign Corporation while the latter owned the said instrument and note attached thereto, and after several installments of rent had been paid by defendant, Neon Tube Sign Corporation assigned to a corporation known as Credit Alliance Banking Corporation the said rental agreement and accompanying promissory note, and thereafter the rental installments provided by said agreement were paid by the defendant to Credit Alliance Banking Corporation until December, 1929, when the defendant refused to pay further rental upon the ground that the sign which the Neon Tube Sign Corporation had agreed to install did not operate.  Under the terms of the rental agreement of said Neon tube, as stated in subdivision (g), the agreement provided as follows:

" (g) Lessor agrees to maintain and keep in good repair the said

SIGN. In the event of the failure cf the SIGN to operate through any fault on the part of the Lessor, the Lessor shall cause the same to be repaired and put in satisfactory working order. Upon such failure to operate, the Lessee shall notify the Lessor, in writing, of such fact, and the Lessor shall, if practicable, cause the SIGN to be put in proper repair within forty-eight hours of the receipt of such notice, and if the same shall be so repaired in such period of time, the Lessee shall be entitled to no diminution of rent or other claim for damages on account thereof. In event the SIGN shall not be operable, because of the fault of the Lessor, for a greater period than forty-eight hours after the Lessor has received notice of the SIGN's disrepair, the Lessee shall receive credit of 1/720th of the monthly rental for every hour over and above such period until the SIGN shall again be in proper working condition, but shall be entitled to no other claim for damages. No claims will be allowed unless notice of SIGN's disrepair be received by registered mail."

By virtue of such provisions of the contract between the defendant and Neon Tube Sign Corporation the defendant refused to make further payments of rental under the contract. The sign did not operate after December, 1929, and no repairs were made to it, either by Neon Tube Sign Corporation or its assignee, Credit Alliance Banking Corporation. After defendant's refusal to pay any further rentals under the contract, Credit Alliance Banking Corporation, without any consideration whatever and merely for the purpose of bringing the present action, assigned the rental agreement and the promissory note in suit to the plaintiff. The plaintiff then brought the present action on the promissory note, alleging in its complaint that the note in suit was a negotiable promissory installment note which the plaintiff had received in due course.

We are of the opinion that the plaintiff not only was without capacity to bring the present action, but that the note in suit, while on its face a negotiable instrument, was, nevertheless, received by plaintiff and by its assignor with notice that the note was burdened with the provisions of the rental agreement entered into between the defendant and Neon Tube Sign Corporation. While the note in suit had been detached from the contract entered into for the installation and maintenance of the light in question, its assignment to plaintiff's assignor was accompanied by a concurrent assignment of the contract for the installation of the light. By the mere detaching of the note from the rental agreement, it did not thereby become an independent obligation of the defendant while in the hands of the owner of the rental agreement. Under the terms of the rental agreement, the Neon Tube Sign Corporation retained title to the sign and, as lessor, was not entitled to the rental

reserved in case the sign did not operate, as provided in paragraph (g) hereinbefore quoted. Had the Neon Tube Sign Corporation brought action on the note against the defendant, undoubtedly the defendant would have had a good defense against such an action. When the rental agreement was assigned by Neon Tube Sign Corporation to Credit Alliance Banking Corporation the latter became the owner of the sign itself and took the position that the lessor under the rental agreement had theretofore occupied. (*Bean* v. *Edge*, 84 N. Y. 510.) The Credit Alliance Banking Corporation was in no better position to collect the rent reserved in the agreement, after failure of the sign to operate, than Neon Tube Sign Corporation would have occupied had the assignment not been made. The primary instrument was the rental agreement entered into between the parties. The note in suit was merely evidence of the rental reserved in the contract, and by detaching the note from the contract Credit Alliance Banking Corporation obtained no greater rights than Neon Tube Sign Corporation originally had, Credit Alliance Banking Corporation then being in possession of both instruments. It is, further, true that the plaintiff, as assignee of Credit Alliance Banking Corporation, took the note, subject to the rental agreement. A very different situation would have been presented had the note alone been indorsed by the Neon Tube Sign Corporation to Credit Alliance Banking Corporation and by the latter to the plaintiff, without any transfer of the rental agreement, and if the assignees had received said note by indorsement without any knowledge of the existence of said contract. However, it is conceded that, at the times of the transfers of the note in suit, both to plaintiff's assignor and to the plaintiff, there was transferred to each assignee the rental agreement, and that each assignee had full knowledge of its terms. A very similar situation was presented in the case of *Bailey* v. *County of Buchanan* (115 N. Y. 297). In that case a bondholder had detached several past-due interest coupons from bonds and assigned them to plaintiff, who sued to recover thereon. The court directed judgment for the defendant and held that while the coupons were negotiable instruments, they were, nevertheless, subject to the conditions of the bond itself while they were in the hands of the bondholder, irrespective of whether or not they had been detached, and since the plaintiff in that case was the assignee of the bondholder, his rights were also limited by the condition of the bond. In that case the Court of Appeals stated (at p. 301): " It is true that past-due coupons, payable to bearer, when detached from the bonds, are for many purposes independent, separate instruments. They may be negotiated and may be sued upon by the holder without the production of the bonds.

[Cases cited.] But the coupons, nevertheless, always have some relation to the bonds. Their force and effect and character may be determined by reference to the bonds. They are secured by the same mortgage, and, although unsealed, are specialties like the bonds and are governed by the same statute of limitations which is applicable to the bonds. Until negotiated or used in some way they serve no independent purpose; and while they are in the hands of the holder they remain mere incidents of the bonds, and have no greater or other force or effect than the stipulation for the payment of interest contained in the bonds; and while they remain in the ownership and possession of the owner and holder of the bonds, it can make no difference whether they are attached to or detached from the bonds, as they are then mere evidences of the indebtedness for the interest stipulated in the bonds."

The facts in the case above cited are practically the same as in the case at bar. In that case the primary instrument was the bond, and the coupons represented simply the payment of interest thereon. The decision in the case last above cited was followed by this court in *Watson* v. *Chicago, R. I. & P. R. R. Co.* (169 App. Div. 663). In that case the plaintiff sought to recover on the interest coupon attached to the bond which was due and unpaid at the time of the commencement of the action. Presiding Justice INGRAHAM, writing for this court in that case, among other things, said: " It is not necessary in this case to determine what right a *bona fide* holder for value of coupons detached from the bonds would have as against the obligor. So long as the coupons are in the hands of the holders of the bonds, ' Their force and effect and character may be determined by reference to the bonds. * * * Until negotiated or used in some way they serve no independent purpose; and while they are in the hands of the holder they remain mere incidents of the bonds, and have no greater or other force or effect than the stipulation for the payment of interest contained in the bonds.' (*Bailey* v. *County of Buchanan*, 115 N. Y. 297.) "

As in the note in suit, the coupons involved in the cases of *Bailey* v. *County of Buchanan* (*supra*) and *Watson* v. *Chicago, R. I. & P. R. R. Co.* (*supra*) contained no reference to the bonds from which they had been detached. The courts, however, based their decisions upon the fact that the coupons in each case were in the possession of the holder or holders of the bonds. So, in the case at bar, the assignee of Neon Tube Sign Corporation was the owner and in possession of the rental agreement, and, therefore, the note which it obtained was subject to such agreement. In the case of *Bank of America* v. *Waydell* (187 N. Y. 115, 120) the plaintiff claimed to be a holder in due course of a draft indorsed to it in blank by the

payee thereof. It appeared, however, that the draft so indorsed was accompanied by a letter from the payee stating that the draft was being sent for collection. The court very properly held that the plaintiff was not a holder in due course, but merely a collecting agent. The Court of Appeals held in that case that while the draft came to the plaintiff by a general indorsement, nevertheless, the letter of advice in transmitting the same must be read with it, and showed that the indorsement was restrictive as though the letter itself had been incorporated in the indorsement. The Court of Appeals in *Ewing* v. *Wightman* (167 N. Y. 112) states the familiar rule that several instruments made between the same parties at the same time and relating to the same subject-matter should be read together as one instrument, citing *Marsh* v. *Dodge* (66 N. Y. 533) and *Draper* v. *Snow* (20 id. 331), and that if one of the writings be a negotiable instrument, the same rule applies in an action between the parties to it or their representatives, citing *Rogers* v. *Smith* (47 N. Y. 324). The Court of Appeals further states in *Ewing* v. *Wightman* (*supra*): " These rules are firmly settled in our jurisprudence, and I think it follows as a necessary corollary from those rules that the law is the same where a promissory note is given for the purchase money on an executory contract for the sale of lands or chattels, as obtains in a case where the only promise to pay is found in the contract of sale itself, provided the action is between the original parties." The rule in *Ewing* v. *Wightman* (*supra*) has been extended and applied to cases where the note came into the hands of a third party *with knowledge of the contemporaneous agreement*. In *National Bank of Watervliet* v. *Martin* (203 App. Div. 390) the action was on a promissory note made by the defendant to the order of one Matton to secure the payment of $7,500 three months after date at the bank of the plaintiff. The defense interposed was that the note in suit was given pursuant to a contract between the defendant and Matton by the terms of which the latter agreed to build a boat for defendant and by which the defendant agreed to pay the sum of $10,500, $3,000 of which was to be paid in cash, and $7,500 by the three months' note. The agreement further provided that the defendant would have the privilege of renewing the note for a further period of three months by paying $250 on account thereof, and in like manner to renew on each due date until the full amount was paid, and that the defendant was to have the right to pay the whole or any part of the note on the renewal date. The note was discounted at the plaintiff bank. Matton, at the same time, assigned the contract as collateral security. When the note became due it was protested for non-payment by plaintiff, and action brought thereon. By a

divided court the plaintiff succeeded in the action. In the prevailing opinion of the Appellate Division the rule contended for by defendant was recognized, the court holding that contemporaneous agreements given at the same time notes and bills of exchange were made must be read in connection with such instruments, and that such instruments became binding also upon any succeeding holder or holders who came into ownership with notice of the existence and terms of such contemporaneous agreement. A majority of the Appellate Division, however, reached the erroneous conclusion that the agreement between the defendant and Matton " did not absolutely postpone the date of payment of the note. It left the time of payment in uncertainty, depending upon the will of the maker." Two members of the Appellate Division, Third Department, dissented and held that one having knowledge of the full agreement of a party cannot hold the obligor to the performance of something set forth in one of the papers with total disregard of the other. The Court of Appeals affirmed the judgment of the Appellate Division, Third Department, refused to follow the reasoning of the majority of that court, and adopted the reasoning in the dissenting opinion. The Court of Appeals, in its memorandum, said: " Judgment affirmed, with costs, on the ground that when the note fell due the maker did not tender plaintiff bank $250 and a renewal note for $7,250. No opinion." (235 N. Y. 611.) It, further, clearly appears from such memorandum that in the view of the Court of Appeals the plaintiff was bound by the terms of the contract which had been assigned to it as collateral security, and that had the defendant made proper tender the plaintiff could not have recovered.

There can be no doubt that when the transaction with reference to the installation of the Neon light in the defendant's place of business was first under consideration the sale contract itself constituted the main and primary agreement. The note in suit was only incidental and secondary to it. The only consideration of the note was the obligation of the conditional vendor under said executory contract. The plaintiff in this action seeks to make the note the primary and principal obligation, and the agreement secondary. If the condition of the note reserving title in the vendor survives, the note cannot be regarded as full payment of the purchase price. Both the plaintiff and its assignor now have possession of both the conditional sale contract and the note in suit, claiming each and all of the rights available under both instruments. However, the plaintiff sues only as the assignee of the note.

In our opinion, the cases cited in the *per curiam* opinion of the Appellate Term have no application to the situation here presented.

In considering the cases thus cited, and upon which the respondent depends, we can do no better than to quote from the dissenting opinion of Mr. Justice HINMAN, approved by the Court of Appeals, in *National Bank of Watervliet* v. *Martin (supra).* Justice HINMAN wrote: " As I understand the cases of *Davis* v. *McCready* (17 N. Y. 230) and *Tradesmen's Nat. Bank* v. *Curtis* (167 id. 194), they simply laid down the rule that the maker of negotiable paper, issued in consideration of a promise of the payee to do something for the former's benefit in the future, will not be permitted to raise the question of lack of consideration against a holder for value in the course of business if the payee fails to perform. *   *   *   But I do not find that these authorities so change the usual rules of contract that one having knowledge of the full agreement of a party . as represented by two papers prepared simultaneously as parts of a complete contract, can hold the obligor to the performance of something set forth in one of the papers with total disregard of the other." In each of the cases cited by the respondent it appears that the note was given absolutely and unconditionally in consideration of a promise by the payee to do something in the future, and that the defense interposed in those cases was failure of performance on the part of the payee. However, in the case here under consideration a promise to pay, as evidenced by the note in suit, was limited by the terms of the contemporaneous agreement made between the maker and the payee. The defense interposed is not the failure of performance of the agreement by the payee, but on the contrary, that the promise to pay, although apparently unconditional, as shown by the note, is, nevertheless, made uncertain and conditional upon the terms of the rental agreement when the two instruments are read together. These instruments must be read together whenever they are found together in the hands of the holder of the note.

The defendant also raises the point upon this appeal that the plaintiff is not the real party in interest. While technical, we think the appellant's point is good. Upon the trial, Mortimer H. Goodman, assistant secretary of the Credit Alliance Banking Corporation, testified in behalf of the plaintiff that he had had dealings with the plaintiff and that " we have assigned claims to them [plaintiff] for the purpose of entering suit on them." Goodman further testified that the note in suit came into the possession of the Credit Alliance Banking Corporation on March 12, 1929, by purchase thereof from the Neon Tube Sign Corporation, and that the note in suit came into the possession of plaintiff on July 14, 1930. Goodman testified that the Federal Credit Bureau, Inc., is a wholly-owned subsidiary of Credit Alliance Corporation, and the Credit Alliance Banking

Corporation is also a wholly-owned subsidiary, and that both used the Federal Credit Bureau, Inc., plaintiff herein, for collection purposes. On cross-examination, in answer to questions propounded by the defendant's trial counsel, Goodman testified: " The Credit Alliance Corporation has a corporation to enter suit on notes, and they assign these notes prior to the suit to the Federal Credit Bureau, who actually enter suit as the plaintiff.

" Q. In other words, they assign it to the Federal Credit Bureau for the purpose of suing, is that correct? A. Correct.

" Q. And the Federal Credit Bureau never paid the Credit Alliance Corporation for this note, did they? A. No."

Goodman further testified that at the time of the transfer of the note, the agreement between Neon Tube Sign Corporation and the defendant was assigned to the Credit Alliance Corporation and to the plaintiff as collateral for the note. It appears from the testimony of Goodman that the plaintiff is used solely as a collection agency, and is not the real party in interest, but is suing for and on behalf of Credit Alliance Banking Corporation. Section 210 of the Civil Practice Act provides: " Every action must be prosecuted in the name of the real party in interest."

In *Spencer* v. *Standard C. & M. Corp.* (237 N. Y. 479) the Court of Appeals defines the term " real party in interest," as follows: " The real party in interest has been defined by this court: ' If, as between the assignor and assignee, the transfer is complete, so that the former is divested of all control and right to the cause of action, and the latter is entitled to control it and receive its fruits, the assignee is the real party in interest.' (*Cummings* v. *Morris*, 25 N. Y. 625.) "

It is, therefore, clear, in this case, that the plaintiff is not the real party in interest. (See, also, *Clark* v. *Dada*, 183 App. Div. 253.) The mere fact that a person is constituted as a collecting agent does not authorize him to sue upon and collect in his own name.

We, therefore, conclude that the judgment granted in Municipal Court in favor of the defendant was correct and should be affirmed, and that the Appellate Term erroneously reversed the same. The determination of the Appellate Term should be reversed, with costs, and the judgment entered upon the trial in Municipal Court should be affirmed, with costs to the defendant, appellant, against the plaintiff, respondent.

FINCH, P. J., McAVOY, MARTIN and O'MALLEY, JJ., concur.

Determination reversed and judgment of the Municipal Court affirmed, with costs to the appellant in this court and in the Appellate Term.