63 So.2d 649 (1953)
MUTUAL FINANCE CO.
v.
MARTIN et al.
Supreme Court of Florida, Division B.
March 10, 1953.
Rehearing Denied March 31, 1953.
Gregory & Cours, Tampa, for appellant.
S.L. Holland, Jr., Bartow, for appellee.
DREW, Justice.
On July 5, 1949, at Homeland, Florida, one W.A. Highsmith, an appliance dealer from Tampa, Florida, sold a tyler deep freezer and a meat saw to F.J. Martin, doing business at Homeland, Florida, as Martin's Grocery (appellee here, defendant below, and to whom we shall hereafter refer as Martin). On the same day the parties entered into a conditional sale agreement and Martin executed a promissory note attached to said conditional sale agreement by perforations, said note being in the principal sum of $1405.68, payable monthly. The note was for the balance due on the equipment. On the following day the conditional sale agreement and promissory note were assigned and endorsed, respectively, by Highsmith to Mutual Finance Company (appellant here, plaintiff below and hereafter called the finance company) for the sum of $1255.
On February 10, 1950, no part of the promissory note above referred to having been paid, the finance company filed its complaint in the lower court seeking a judgment against Martin for the amount *650 thereof, interest, attorneys' fees and costs. Martin answered alleging, among other things, that the finance company was not the holder in due course of the note and that because the deep freezer was not as represented and was wholly valueless for the purposes it was sold to Martin, there was a failure of consideration in the original transaction, which resulted in the execution of the note.
As a result of two pre-trial conferences and the highly commendable efforts and co-operation of the attorneys representing the respective parties in simplifying the issues, the following facts were agreed to and are incorporated in the record:
1. That the note sued on is a negotiable instrument under the laws of Florida.
2. (a) That the promissory note was executed to secure the balance due on the freezer and saw.
(b) That the price of the freezer was $1495, the saw $390, carrying charges $150.68 and that Martin paid $625 in cash at time of closing, leaving a balance due of $1405.68.
(c) That the note and conditional sale agreement were executed concurrently and as a part of the same transaction.
(3) The finance company admits that it prepared and furnished to W.A. Highsmith the printed forms for the conditional sale agreement and promissory note described in the pleadings herein; that said printed forms designate the finance company as the specific assignee of said conditional sale contract and note, and shows its name in bold type at the top and throughout the body of said contract and note; that the finance company's office is designated as a place of payment of said contract and note; that on the day before said transaction took place, the finance company investigated Martin's credit standing, approved the terms of, and agreed to purchase the contract and note involved herein in the event the transaction between Martin and W.A. Highsmith was consummated; that by said printed assignments the finance company took said contract and note contemporaneously by purchasing the same from W.A. Highsmith the day following the execution thereof.
4. That the finance company paid Highsmith $1255 for the note and conditional sale agreement by delivery to him $1129.50 cash and crediting his (Highsmith's) reserve account with the finance company the balance of $125.50, said sum to be paid Highsmith upon the completion of the payments by Martin.
5. That the finance company, to the extent set forth herein, provided financing for the said W.A. Highsmith in his operation as a dealer on a "Floor Plan" basis for a period commencing June 14, 1946 and terminating January 24, 1950. The finance company received from the said W.A. Highsmith a total of 18 "Floor Plan" notes secured by mortgages on the various articles held for resale by the said W.A. Highsmith, 8 of which loans were made in 1946, 4 of which were made in 1947, 4 of which were made in 1948, one of which was made in 1949 and the last of which was made January 24, 1950.
6. Subject to the specific understanding that it is not intimated or suggested that the finance company had any actual knowledge or information concerning any fraudulent representations or failure of consideration, the finance company admitted that prior to the purchase of said personally and on or about July 1, 1949, Martin was approached by one Luther Keen, who represented himself to be the lawful agent of said Highsmith; that said Luther Keen then and there represented to Martin that said Highsmith desired to sell to Martin a new model Tyler Deep Freezer, and that said Highsmith owned stock in the finance company, which said company would finance said sale.
That thereafter on or about July 4, 1949, and before the purchase of said personalty, said Highsmith personally approached Martin and represented to him that he was an authorized Tyler Deep Freezer dealer, that said Tyler Deep Freezer so offered by him for sale to Martin was the very latest and best model, that it was suitable for the keeping of ice cream on *651 display in its upper exposed portion, and that it was efficient for its intended purpose of keeping all frozen foods and selling them on display.
That all of said representation so made to Martin by said Luther Keen and said Highsmith were false, were known by them to be false, were acted upon and relied upon by Martin in and about the purchase of said personalty, to his detriment, and that Martin would not have purchased said personalty but for said false representations.
That said Tyler Deep Freezer was and is wholly unfit for the purpose for which it was intended and represented, that said Freezer was and is in truth and in fact an old, inefficient, completely outmoded model; that it has never maintained the necessary temperature required by its own specifications for its proper and efficient use; that Martin suffered losses of large quantities of ice cream and other foods; and by reason whereof Martin suffered a total failure of consideration for his purchase of said Freezer.
That thereafter by reason of said fraud and of said failure of consideration, and after many unsuccessful attempts by said Highsmith to make said Freezer work, and after the finance company undertook to make said Freezer work, and failed in performing said undertaking that Martin on or about January 15, 1950, gave final notice of his rescission of said conditional sale agreement, and ceased trying to use said Freezer; and that Martin therefore owes no money to the finance company.
7. That in December of 1949 the finance company, in order to prevent rescission of said conditional sale agreement, undertook to remedy the defects of said deep freezer and Martin agreed, in consideration thereof, to pay the amount of two installments each month until the payments became current; that the finance company failed to remedy said defects and because thereof Martin ceased using said deep freezer, rescinded said conditional sale agreement but the finance company refused to take said freezer back.
8. That the deep freezer was of no value to Martin.
9. That the finance company relies upon its contention that it is a bona fide holder of the note, in due course, in that said note is not subject to the defense of fraud and failure of consideration.
After the above facts had been agreed to by the parties, the lower court entered its order finding that no genuine issue of any material fact remained in the case and entered a summary final judgment finding that, and we quote verbatim, "under the admitted facts and the law the plaintiff Mutual Finance Company, a corporation, is not a holder of the note in due course, and is therefore subject to the defense of fraud and failure of consideration and allowing credit for the purchase price of the Tyler Deep Freezer, that there is no balance due on the note." It is from this final judgment that this appeal is prosecuted.
The Uniform Negotiable Instruments Act was the result of many years of work on the part of business men, banks, bar associations, jurists, and the citizens in general. The object sought was to produce uniformity in the Country, so far as possible, in the law relating to the subject. The Act, as finally agreed upon, was finished in 1896 and, only a few months later, in the Spring of 1897, it became part of the Statute Law of Florida. It is now in force in all of the States and Territories of the United States and the District of Columbia. See 7 Am.Jur. 801. There have been few changes in the Act since its adoption more than fifty years ago. It is interesting to note that the Sections of the Act primarily involved here are viz:
Section 674.59, F.S.A., which reads:
"A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."
Section 674.54, F.S.A., which reads:
"A holder in due course is a holder who has taken the instrument under the following conditions:

*652 "(1) That it is complete and regular upon its face;
"(2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;
"(3) That he took it in good faith and for value;
"(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."
Section 674.58, F.S.A., which reads:
"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."
have never been amended in any respect since the original Act, Chapter 4524, Acts of 1897, was adopted.
The question presented on this appeal is whether, under the admitted facts as stated above, the finance company was a bona fide holder in due course of Martin's note under the provisions of the Negotiable Instruments Law above quoted, and, therefore, not subject to personal defenses interposed by Martin.
This proposition has not heretofore been answered by this Court. An examination of the authorities reveals a sharp conflict in the decisions. In some States the rule is that in a suit on a note executed concurrently with and as a part of the conditional sale agreement, retain title contract or similar instrument, personal defenses, such as fraud or failure of consideration may be interposed. Illustrative of this point of view are Von Nordheim v. Cornelius, 129 Neb. 719, 262 N.W. 832; Federal Credit Bureau, Inc., v. Zelkor Dining Car Corporation, 238 App.Div. 379, 264 N.Y.S. 723; Todd v. State Bank, 182 Iowa 276, 165 N.W. 593, 3 A.L.R. 791; State National Bank of El Paso, Tex. v. Cantrell, 47 N.M. 389, 143 P.2d 592, 152 A.L.R. 1216.
On the other hand, many respectable authorities take an entirely different viewpoint. They hold that under such circumstances personal defenses are not available to the maker of the note. See Thal v. Credit Alliance Corp., 64 App.D.C. 328, 78 F.2d 212, 100 A.L.R. 1354; Commercial Credit Co. v. M. McDonough Co., 238 Mass. 73, 130 N.E. 179; Northwestern Finance Co. v. Crouch, 258 Mich. 411, 242 N.W. 771; B.A.C. Corporation v. Cirucci, 131 N.J.L. 93, 35 A.2d 36; Motor Finance Corporation v. Huntsberger, 116 Ohio St. 317, 156 N.E. 111; Shawano Finance Corporation v. Julius, 214 Wis. 637, 254 N.W. 355. Also see the annotations in A.L.R. Vol. 100, page 1357, Vol. 128, page 729, Vol. 152, page 1222.
So far as negotiability is concerned, we see no reason why the concurrent execution of a retain title contract, conditional sale agreement, or similar instrument, along with a promissory note for the balance of the purchase price of personal property, should enter into the picture, or in any way affect any of the characteristics of the note which give it commercial value. We have so held in Voges v. Ward, 98 Fla. 304, 123 So. 785; Fowler v. Industrial Acceptance Corp., 101 Fla. 259, 134 So. 60; Robertson v. Northern Motor Securities Co., 105 Fla. 644, 142 So. 226. Nor do we see that it makes any difference whether the note is executed simultaneously on a separate piece of paper or is attached to the conditional sale agreement or retain title contract by perforations.
We have carefully examined the many cases dealing with this matter in the light of modern conditions and we are not in accord with either of the rules which we have previously mentioned. We think, so far as the admitted facts in this case are concerned, that the better rule is that approved in Commercial Credit Co. v. Childs, 199 Ark. 1073, 137 S.W.2d 260-261, 128 A.L.R. 726, wherein the Arkansas Court said:
"* * * The note and contract are attached and constitute one instrument covering an agreement of the sale and purchase of the automobile in question. * * * The note, contract and assignment were all executed and signed the same day. The instrument was prepared and delivered to *653 the Arkansas Motors, Inc., by appellant to be used by it in the sale and purchase of cars. Appellant financed the deal.
"We think appellant was so closely connected with the entire transaction or with the deal that it can not be heard to say that it, in good faith, was an innocent purchaser of the instrument for value before maturity. * * Rather than being a purchaser of the instrument after its execution it was to all intents and purposes a party to the agreement and instrument from the beginning. * * *" (Emphasis supplied.)
For an interesting analysis and discussion of the above decision see 53 Harvard Law Review, 1200. See also Commercial Credit Corp. v. Orange County Machine Works, 34 Cal.2d 766, 214 P.2d 819, 822, where the Supreme Court of California said:
"When a finance company actively participates in a transaction of this type from its inception, counseling and aiding the future vendor-payee, it cannot be regarded as a holder in due course of the note given in the transaction and the defense of failure of consideration may properly be maintained. Machine Works never obtained the press for which it bargained and, as against Commercial, there is no more obligation upon it to pay the note than there is to pay the installments specified in the contract."
To paraphrase the last sentence of the above quotation to fit the instant case, "Martin never obtained the deep freezer he bargained for, and, as against the finance company there is no more obligation upon him to pay the note than there is to pay the installments specified in the conditional bill of sale."
We therefore hold that under the facts shown in this record the finance company had such notice of the note's infirmity as is contemplated under Section 674.54(4), F.S.A., and that the defenses interposed by Martin were proper and lawful defenses to the action.
The argument has been advanced by appellant that this cause should be reversed and that this Court should hold the finance company to be a holder in due course of the note and that personal defenses are unavailable against it. Appellant says that unless this is done it "will destroy the long established precedent of the State of Florida and thereby seriously affect `a certain mode of transacting business adopted throughout the State in reliance thereon.'" It may be that our holding here will require some changes in business methods and will impose a greater burden on the finance companies. We think the buyer  Mr. & Mrs. General Public  should have some protection somewhere along the line. We believe the finance company is better able to bear the risk of the dealer's insolvency than the buyer and in a far better position to protect his interests against unscrupulous and insolvent dealers. Even in this case the record shows that the finance company retained from the purchase price of the note and conditional sale agreement the sum of $125 "to be paid to Highsmith upon the completion of the payments by Martin." Obviously it was retained to protect the finance company against loss on the note.
If this opinion imposes great burdens on finance companies it is a potent argument in favor of a rule which will afford protection to the general buying public against unscrupulous dealers in personal property. See Buffalo Industrial Bank v. DeMarzio, 162 Misc. 742, 296 N.Y.S. 783; Industrial Loan & Trust Co. v. Bell, 300 Ill. App. 502, 21 N.E.2d 638; Taylor v. Atlas Security Co., 213 Mo. App. 282, 249 S.W. 746; United States v. Hansett, D.C., 30 F. Supp. 455.
For the reasons herein stated the judgment of the lower court is
Affirmed.
SEBRING, Acting Chief Justice, and ROBERTS and MATHEWS, JJ., concur.