PUERTO RICO HOME APPLIANCES CORPORATION, Plaintiff and Appellee, *v.* UNIVERSAL FURNITURE COMPANY, INC., Defendant and Appellant.

No. 11098.    Argued April 2, 1954.—Decided June 11, 1954.

*Enrique Igaravídez* for appellant.    *Rodríguez Ema & Rodríguez Ramón* for appellee.

MR. CHIEF JUSTICE SNYDER delivered the opinion of the Court.

This is a suit by Puerto Rico Home Appliances Corp, against Universal Furniture Co., Inc. for collection of money. After a trial on the merits, the trial court entered a judgment in favor of the plaintiff for $7,790.86. The case is here on appeal from that judgment.

The findings of fact of the trial court were in substance as follows: The plaintiff distributes "Hotpoint" electrical appliances in Puerto Rico through agents or dealers. Under the agent system the products are displayed solely for exhibition at the establishment of an agent, who makes retail sales in the name of the plaintiff. When the sales are made on credit, the conditional sales contracts and promissory notes are executed in the name and for the benefit of the plaintiff. Before such installment sales are made, the plaintiff makes a credit investigation of the prospective purchaser. It—not the agent—determines whether credit should be extended to the particular customer. When its decision is in the affirmative, the plaintiff obtains recordation of the conditional sales contract in the appropriate registry. The purchaser receives delivery of his appliance by the plaintiff from the stock which the latter maintains in its warehouse. The agent receives a commission on each sale. The plaintiff collects the installments for the sales price and repossesses the appliance in the event the purchaser fails to pay the installments. The agent is not responsible for the installment payments by the retail purchaser.

Under the dealer system the plaintiff sells the appliances wholesale to dealers who in turn sell them at retail directly to the public. Contrary to the display system used by the agents, the dealers sell the appliances which are in their establishments. If they sell on credit, they use conditional sales contracts and promissory notes which are executed exclusively in the name and for the benefit of the dealer. The latter records such contracts in the corresponding registry. The dealer's price is charged against him in an open account on the plaintiff's books, the contract of sale as between it and

the dealer being considered as perfected when the retail sale is made by the dealer. Sales to purchasers are made exclusively by the dealer without any credit investigation by the plaintiff or any other intervention by the latter.

The defendant sold at retail "Hotpoint" appliances and products of other firms through various establishments which it operates in the metropolitan area. Beginning in April 1949, the plaintiff sold "Hotpoint" appliances to the defendant under the dealer system. The latter sold these products at retail to customers out of its own stock, without any credit investigation by the plaintiff. The plaintiff charged the defendant for products sold by the latter and the plaintiff received checks periodically from the defendant as payment therefor; the conditional sales contracts and promissory notes, made out to the defendant, were simultaneously discounted by the defendant with the plaintiff, who issued its checks therefor to the defendant, less financing expenses. Subsequently, instead of issuing checks to the plaintiff, the defendant began to discount with the plaintiff against an open account the conditional sales contracts and promissory notes it obtained from purchasers. The conditional sales contracts were endorsed by the defendant to the plaintiff by providing thereon that the defendant "assigned and transferred" all its rights in them to the plaintiff. The promissory notes were endorsed "Universal Furniture Co., Inc. By: D. Diago."

When a maker of a contract and note defaulted in a monthly payment, the plaintiff sent a list to the defendant, as well as to all its other dealers, showing such arrears, and requiring the defendant and such other dealers to make the said back payments. The plaintiff's manager wrote the defendant two letters, dated October 20, 1949 and January 19, 1950, calling the defendant's attention to the fact that it was considerably behind in payments under the agreement between them whereby the defendant would make good any defaults in the payments by the retail purchasers. The

defendant made such payments for a year without objection. It never questioned the contents of the two letters; it denied its responsibility for the payments for the first time in September, 1950.

The defendant sold at retail on the installment plan furniture and other types of household articles which it bought wholesale from other firms. It sold these other products on the basis of conditional sales contracts only, without promissory notes. It used promissory notes in its dealings with the plaintiff and endorsed them in blank because that was the only basis on which the plaintiff would do business with it.

In its Conclusions of Law the trial court characterized the transactions between the parties as contracts of discount of commercial documents which are not regulated by the Code of Commerce. It therefore held that under § 81 of the latter Code the transactions were governed by § 1124 of the Civil Code and that the original debt of the defendant to the plaintiff remained in effect while the notes were not paid, citing among other authorities *Dávila* v. *Torres*, 58 P.R.R. 880; *González* v. *Virella*, 24 P.R.R. 376; *Santini Fertilizer Co.* v. *Jiménez*, 42 P.R.R. 32; Brannan's *Negotiable Instruments Law*, 6th ed., p. 895. The trial court also stated: (1) the practice that the defendant followed of paying monthly the notes which were in default in accordance with the monthly list furnished by the plaintiff constituted a commercial custom which was the law between the parties, citing § 2 of the Code of Commerce; Tullio Ascarelli, *Derecho Mercantil*, pp. 31–33; César Vivante, 1 *Tratado de Derecho Mercantil*, p. 41; 1 Gay de Montellá, *Código de Comercio*, p. 22; (2) the notes are negotiable instruments, citing § 67 of the Negotiable Instruments Law and *París* v. *Canety*, 73 P.R.R. 386; and (3) even if the notes are nonnegotiable the defendant is liable therefor to the plaintiff because of its endorsement in blank, citing 8 Am. Jur. § 556, p. 261, and 79 A.L.R. 720–1.

■■ The first assignment is that the trial court erred in permitting the plaintiff to amend the complaint at the

beginning of the hearing of the case. This is a frivolous contention. The defendant conceded at the oral argument that it did not "emphasize" this point. The question raised by the defendant was that the trial court should not have permitted the plaintiff to prove an agreement between the plaintiff and the defendant under which the latter was obligated to make the back payments when purchasers were in default and a mercantile practice to this effect because these two points were not specifically alleged in the complaint. The complaint, which was never actually formally amended, alleged only that the defendant owed the plaintiff a specified sum of money because the defendant had endorsed and transferred to the plaintiff a series of conditional sales contracts and promissory notes which were thereafter not paid by the purchasers. In the first place, the two points in question were specifically raised in the affidavits filed by the plaintiff in opposition to the defendant's motion for summary judgment; the pleadings could therefore be considered as amended to conform thereto, at least for the purposes of the motion for summary judgment. *Hettinger & Co.* v. *District Court*, 69 P.R.R. 128, 133; *Hernández* v. *Caraballo*, 72 P.R.R. 628, 636; 6 Moore's *Federal Practice* 2056 (2d ed.). Secondly, and more important, in the absence of surprise, which is not alleged here, the pleadings may be considered as amended to conform to the proof. Rule 15(b), Rules of Civil Procedure; *Yordán* v. *Ríos*, 68 P.R.R. 241; *Ruiz* v. *Ruiz*, 74 P.R.R. 321, *Echevarría* v. *Despiau*, 72 P.R.R. 442.[1] The first error was not committed.

■■ The other assignments were that the trial court erred: (*a*) in permitting proof as to commercial practices when the plaintiff predicated its case on an agreement between the parties; (*b*) in ignoring the evidence of the plaintiff itself that such an agreement existed; (*c*) in not holding

---

[1] As we pointed out in *Shell Co.* v. *District Court*, 73 P.R.R. 413, 421, ". . . the function of the pleadings is merely to skeletonize the controversy and for each party to notify the other of the general nature of their opposing contentions."

that the terms of the agreement were not proved by the plaintiff; (*d*) in giving weight to self-serving letters from the plaintiff to the defendant as to the commercial practices, since the latter could be effective only in the absence of an agreement between the parties; (*e*) in accepting unilateral secondary proof of the agreement offered by the plaintiff, when the latter had direct proof thereof which it did not produce; (*f*) in determining, without such direct proof, the terms of the contract between the parties; (*g*) in applying § 1124 of the Civil Code to this case; (*h*) in concluding that the defendant owed the plaintiff the sum of $7,790.86; (*i*) in applying the theory of commercial custom to this case; (*j*) in holding that the promissory notes herein were negotiable; (*k*) in holding that even if they were nonnegotiable, the defendant was liable for payment thereof because it endorsed them in blank; (*l*) in entering judgment for $7,790.86 and attorney's fees of $600 in favor of the plaintiff.

Most of these errors need not be considered separately. The record contains sufficient oral and documentary evidence supporting the findings of fact of the trial court that under the agreement between the parties the defendant sold appliances as a dealer rather than as an agent. We shall therefore not interfere with such findings. [2] And we find no prejudicial error in the action of the trial court in permitting the plaintiff to prove that its commercial custom vis-a-vis the defendant and other dealers coincided with the terms of its agreement with the defendant. See *Portilla* v. *Banco Popular*, 75 P.R.R. 94, 113, *et seq.*

■■ We do not stop to determine whether the promissory notes were rendered nonnegotiable by virtue of the reference therein to the conditional sales contracts. *Cf.*

---

[2] Subsequent to the dispute herein, the plaintiff made its arrangements with its dealers even clearer by having them execute written agreements which specifically provided that they were responsible to the plaintiff in the event of default by purchasers on the installment basis. But the record here is sufficient to show such responsibility even without such a specific written agreement.

Britton on *Bills and Notes*, pp. 62–64, and cases cited; Annotation, 61 A.L.R. 815. The endorsement thereof in blank under the circumstances of this case made the defendant liable to the plaintiff for their payment after default by the makers (*a*) whether the notes were negotiable, *París* v. *Canety, supra*, 389, and authorities cited; or (*b*) whether the notes were nonnegotiable, § 1124, Civil Code, 1930 ed.; [3] *Dávila* v. *Torres, supra; Santini Fertilizer Co.* v. *Jiménez, supra; González* v. *Virella, supra;* Annotation, 79 A.L.R. 720; Ann. Cas. 1912 B 707; cases cited in 8 Am. Jur. p. 261, footnote 14; 26 Ill. L. Rev. 911; Note, 98 U. Pa. L. Rev. 213. Cf. §§ 265–6, Code of Commerce, 1932 ed.; 1418–9 Civil Code. [4]

The defendant complains that the plaintiff sued for $9,453.94 and at the trial reduced this to a claim for $7,790.86. The explanation vouchsafed by the plaintiff was that some of the purchasers made payment to it on their notes while the suit was pending trial. It was therefore quite proper for it to reduce its claim to that extent at the trial. If any similar additional payments have been made subsequent to trial, the defendant is of course entitled thereto. [5]

The judgment of the Superior Court will be affirmed.

Mr. Justice Pérez Pimentel did not participate herein.

[3] Section 1124 provides in part that "The delivery of promissory notes to order or drafts or other commercial paper shall only produce the effects of payment when collected or when, by fault of the creditor, their value has been affected."

[4] For discussion of a different question, involving the problem of whether a finance company under certain circumstances is a holder in due course of a promissory note executed concurrently with a conditional sales contract, *cf. Mutual Finance Co.* v. *Martin*, 63 So.2d 649 (Fla., 1953), commented on in 39 Va. L. Rev. 830; *Commercial Credit Corp.* v. *Orange County Mach. Wks.*, 214 P.2d 819 (Calif., 1950); *White System of New Orleans, Inc.* v. *Hall*, 53 So.2d 227 (La., 1951), commented on in XXVII Tulane L. Rev. 255; Kripke, *Chattel Paper As a Negotiable Specialty Under the Uniform Commercial Code*, 59 Yale L. J. 1209, 1220–2; 98 U. Pa. L. Rev. 244. We make no comment on this problem.

[5] The plaintiff also points out that some of the purchasers have voluntarily surrendered the appliances for which they did not pay in full to the plaintiff, who has notified the defendant that such appliances are at the disposition of the latter.