**WALTER J. HIEB SAND & GRAVEL, INC., Appellant,**

v.

**UNIVERSAL C. I. T. CREDIT CORPO- RATION, Appellee (three cases).**

**UNIVERSAL C. I. T. CREDIT CORPO- RATION, Appellant,**

v.

**Ella EDINGER et al., Partners, D/B/A J. Edinger & Son, Appellee.**

Court of Appeals of Kentucky.

June 19, 1959.

As Modified and Extended on Denial of Rehearing March 18, 1960.

James B. Young, James P. Hancock, Louisville, for Hieb.

Louis H. Jull, Wilbur Fields, Louisville, for Universal.

Glenn L. Schilling, Louisville, for Edinger.

C. E. Schindler, Louisville, Ky., amicus curiae for Commercial Credit Corp.

MILLIKEN, Judge.

While there are several collateral questions raised in this consolidated litigation, the determinative questions presented pertain to the rights of creditors as among themselves and the validity of a waiver of defense provision in conditional sales contracts.

In the summer of 1956 the Walter J. Hieb Sand & Gravel, Inc., of Louisville bought ten trucks from Reo Motors, Inc., of Lansing, Michigan, through Reo's branch office in Indianapolis. The trucks were sold on conditional sales contracts, which were nonnegotiable instruments, and possession of the trucks was relinquished to Hieb by the seller, Reo, for the purpose of having specially constructed dump beds installed upon them by the Edingers, doing business as J. Edinger & Son. In each instance the installation of the dump bed was accomplished before the conditional sales contract for the respective truck was recorded and the equipped truck delivered under the contract. The recording of the last conditional sales contract occurred on September 17, 1956.

Hieb had done business with the Edingers for many years on an open account, and the installation of the dump beds on these ten Reo trucks was done on that basis. However, on November 29, 1956, Hieb gave the Edingers a chattel mortgage on the dump beds as security when Hieb was unable to meet its payments to the Edingers for the dump beds, the last of which had been installed immediately prior to the recordation of the last conditional sales contract on September 17, 1956, by Universal C.I.T. Credit Corporation to whom the contracts had been assigned by Reo.

■ After Hieb failed to make its payments on the conditional sales contracts, Universal filed, on March 15, 1957, its actions to obtain possession of the trucks from Hieb. In its answer, Hieb admitted its indebtedness to Universal but asserted the defective condition of the trucks as the reason for its inability to pay Universal, alleged that it "believes" Universal was an agent of Reo "chargeable with the acts and omissions of Reo," and prayed that its (Hieb's) liability be held in abeyance until the liability of Reo, a nonresident, could be determined, and, subsequently, filed a third-party complaint against Reo. In the meantime, the Edingers filed their action against Hieb for $10,098, the balance due on its dump bed account, with interest.

In May, 1957, counsel for the parties to this litigation stipulated: (1) that the dump beds were on all ten of the Reo trucks at the time of the execution of the conditional sales contracts; (2) that the conditional sales contracts were recorded prior to the execution and recording of the chattel mortgage on the dump beds by Hieb to the Edingers on November 29, 1956; and (3) that both the conditional sales contracts and the chattel mortgage from Hieb to the Edingers were executed and recorded prior to the execution and recording of a chattel mortgage from Hieb to the Citizens Fidelity Bank & Trust Company on February 7, 1957, on its interest in the Reo trucks to secure a loan of $21,741.60 made by the Bank to Walter J. Hieb Sand & Gravel, Inc., and Walter J. Hieb personally.

The net results of the proceedings in the trial court were that Hieb's answer and third-party complaint against Reo were dismissed; possession of the trucks, with beds, was delivered to Universal; the Edingers were given judgment on their claim against Hieb for installation of the dump beds; and the trucks were sold publicly by Universal for $48,000. How-

ever, the trial court adjudged the chattel mortgage to the Edingers, dated November 29, 1956, superior to the conditional sales contracts of Universal, the last of which was recorded on September 17, 1956, and, consequently, directed Universal to pay to the receiver of the court out of the proceeds of sale the sum of $10,597.13, the amount of the Edingers' judgment against Hieb on the dump beds, to be held by the receiver until the rights of the parties could be determined by this court on appeal.

The standard, printed "Conditional Sale Contract" of Universal C.I.T. Credit Corporation for use in "Kentucky and Oregon" was the one executed by Hieb and Reo to cover the terms of their contract for the sale of each of the ten trucks, and the assignments of Reo to Universal were executed by Reo on spaces provided for therein. Under the provisions of the contracts Hieb, "the customer," was to pay specific amounts each month "at the office of Universal" until its obligations on the contracts were paid in full. Besides the usual retention of title in the seller until the sales price was paid and the usual provision for recovery of possession of the vehicle by the seller or holder of the contracts in case of default in payments, the contract also provided that "Customer (Hieb) agrees * * * that all equipment, tires, accessories and parts shall become part of the car by accession; * * * to settle all claims against seller (Reo) directly with seller (Reo) and not to set up any such claim in any action brought by Universal C.I.T. * * * Customer admits that seller (Reo) is not Universal C.I.T.'s agent for any purpose. * * * No agreement, representation or warranty shall be binding on the holder unless expressly contained herein." The gist of the transaction is that Reo sold the trucks and Universal (on the conditions stated in the contract) supplied the money to buy them, taking as security Reo's contracts with Hieb.

Although Hieb admitted its liability to Universal, it is, nevertheless, Hieb's contention on appeal that it is entitled to plead Reo's alleged breach of warranty as a defense to Universal's action for repossession of the trucks regardless of whether Reo is or is not before the court. The record reveals that no service was had on Reo. In Kentucky it is provided by statute, KRS 371.040, that an "assignment shall not impair the right to any defense, discount or set-off that the defendant has and might have used against the original obligee, or any intermediate assignor, before the defendant received notice of the assignment." If Hieb can establish by proof the alleged breach of warranty by Reo, it would be permitted to do so under this statute in the action brought against it by Universal unless its contractual waiver of its statutory right to do so is binding upon it.

There is a conflict of authority whether such a waiver clause is valid, and the question has not been decided in this jurisdiction. Some courts have held such clauses to be void as against public policy. 44 A.L.R.2d Annotation, Sec. 25, pages 162 et seq., (1955); Quality Finance Company v. Hurley, 1958, Mass., 148 N.E.2d 385; San Francisco Securities Corporation v. Phoenix Motor Company Inc., 25 Ariz. 531, 536–540, 220 P. 229; American National Bank of San Francisco v. A. G. Sommerville, Inc., 191 Cal. 364, 370–372, 216 P. 376; Pacific Acceptance Corporation v. Whalen, 43 Idaho 15, 19, 248 P. 444; Industrial Loan Company of Cape Girardeau v. Grisham, Mo.App., 115 S.W. 2d 214, 216; Motor Contract Company v. Van Der Volgen, 162 Wash. 449, 452–455, 298 P. 705, 79 A.L.R. 29; Equipment Acceptance Corporation v. Arwood Can Manufacturing Company, 6 Cir., 117 F.2d 442, 446. *Other cases reach a contrary result.* Refrigeration Discount Corporation v. Haskew, 194 Ark. 549, 551, 108 S.W.2d 908; Jones v. Universal C.I.T. Credit Corporation, 88 Ga.App. 24, 26–27, 75 S.E.2d 822; Commercial Credit Corporation v. Biagi,

11 Ill.App.2d 80, 82, 136 N.E.2d 580; United States ex rel. and for Benefit of Administrator of Federal Housing Administration v. Troy-Parisian, Inc., 9 Cir., 115 F.2d 224, 226, certiorari denied sub nomine Troy-Parisian, Inc., v. United States, 312 U.S. 699, 61 S.Ct. 739, 85 L.Ed. 1133. The underlying problem is summarized in Corbin on Contracts, Section 1515:

"It is obvious that when a right, a privilege, or a defense is conferred upon an individual by the law, it is conferred upon him because it is believed to be in the public interest to do so. In many such cases it is believed to be contrary to the public interest to permit him to waive or to bargain away the right, privilege, or defense; and when it is so believed the attempted waiver or bargain is inoperative. In these cases the waiver or bargain may itself be described as 'illegal,' but only in the sense that it is legally inoperative."

There is no question but that the seller and buyer here could have executed negotiable indicia of the sale which would have cut off the defense pleaded here. Thus there seems to be no logical reason why they could not impart to their contract limited aspects of negotiability with the purpose of facilitating the financing of their transaction. 44 A.L.R.2d Annotation, Section 25, pages 162–169. In fact, a portion of our Uniform Sales Act, KRS 361.710, authorizes agreed variations of implied obligations usually incident to sales:

"Where any right, duty or liability would arise under a contract to sell or a sale by implication of law, it may be negatived or varied by express agreement or by course of dealing between the parties * * *."

Although it will not be in effect in this state until July 1, 1960, the Uniform Commercial Code, Section 9–206(1) (adopted in 1958, S.B. 169, Acts 1958, c. 77), provides in part:

"Subject to any statute or decision which establishes a different rule for buyers of consumer goods, an agreement by a buyer that he will not assert against an assignee any claim or defense which he may have against the seller is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense, except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument under the Article on Commercial Paper (Article 3). A buyer who as part of one transaction signs both a negotiable instrument and a security agreement makes such an agreement."

It is our conclusion that the waiver of defenses contained in the conditional sales agreement does not offend the public policy of this state and, as a consequence, the trial court properly ignored Hieb's defense and correctly adjudged Universal entitled to repossession of the trucks.

We now get down to the financial side of this case—who gets the money and in what proportions? "It is stipulated by and between the parties hereto that the dump beds were on all ten of the Reo trucks involved in these ten suits at the time of the execution of the Conditional Sales Contracts, copies of which are filed with the respective complaints."

In the case at bar, the Edingers denied having any notice of either Reo's claim or Universal's prior to the installation of the dump beds on the trucks, a contention consistent with the afore-quoted stipulation. In fact, the first two trucks were delivered to the Edingers by Hieb personally for installation of the dump beds. On the other hand, Reo contended that the Edingers actually knew that the trucks were sold by it to Hieb on conditional sales contracts, that Reo and Universal

would assert liens not only on the trucks but also on the dump beds, and that the Edingers admitted they nevertheless sold the dump beds to Hieb on an open account. However this may be, Reo notified the Edingers by letter of August 31, 1956, after all of the dump beds had been installed, that Universal claimed conditional sales liens on the trucks "complete with dump beds" and declared that in case it became necessary to repossess the trucks the Edingers would be permitted to remove the dump beds unless Hieb had paid for them.

The significant fact in the case is that neither Reo nor Universal had a lien even on the truck chassis at the time the dump beds were installed, or at the time the foregoing letter was written, for the reason that the conditional sales contracts creating the liens were not executed until a later date. When the conditional sales contracts were executed, liens on the truck chassis only were imposed by virtue of the sale because they were the only things sold by Reo to Hieb. If these instruments also created liens on the dump beds by way of mortgages, such liens were subject to the prior claim of the Edingers in accordance with the arrangement made with them by Reo as confirmed in this August 31 letter.

Throughout the record it is apparent that Reo and Universal had had so many transactions together that their relationship might be described as a commercial marriage of mutual convenience. It is safe to conclude that Universal realized that Reo sold only the trucks without dump beds to Hieb and that the conditional sales contracts, had they been executed at the times of the various sales as they probably should have been, would have covered only the trucks without the dump beds. By delaying the execution of the conditional sales contracts until after the dump beds had been attached to the trucks, both Reo and Universal obtained greater security than they normally would have obtained.

It may be argued as a general thing that obtaining greater security is both legitimate and good business, but we are not dealing with generalities. Here, Reo's letter to the Edingers, together with its failure to obtain and file of record conditional sales contracts at the times of the sales and deliveries of the truck chassis to Hieb, served to lull the Edingers into inaction, and enabled both Reo and Universal to obtain greater security by including the dump beds in their conditional sales contracts with Hieb. It is apparent that Universal knew of the sale by Reo to Hieb long before the respective conditional sales contracts were executed, that it was as well informed as Reo, its assignor, and consequently we conclude that both it and Reo are estopped to claim conditional sales liens on the dump beds against the Edingers. See Mutual Finance Co. v. Martin, Fla., 63 So.2d 649, 44 A.L.R.2d 1.

Since the trial court allowed the Edingers the full value of the dump beds, the judgment should be modified to require the Edingers to bear their proportionate share of the costs of sale.

The judgment is affirmed on Universal's appeal with the modification as directed in this opinion.

The judgment is affirmed on Hieb's appeal and cross-appeal.