186 So.2d 321 (1966)
The NATIONAL STATE BANK OF NEWARK, a United States Banking Corporation, Appellant,
v.
ROBERT RICHTER HOTEL, INC., Appellee.
No. 65-738.
District Court of Appeal of Florida. Third District.
May 17, 1966.
*322 Leonard H. Rubin, Miami, for appellant.
Sinclair, Barfield & Louis, Miami, for appellee.
Before HENDRY, C.J., and PEARSON and BARKDULL, JJ.
PEARSON, Judge.
The final judgment we are called upon to review was entered upon a directed verdict for the defendant, appellee, at the conclusion of all the evidence. The plaintiff, appellant, brought the action to recover a claimed balance due upon a conditional sales contract. The appellant is the assignee of the contract. The appellee based its defense upon a claim that the appellant, Bank, was not a good-faith purchaser of the contract, and the appellee proved a return of the goods to the seller. The trial judge ruled that as a matter of law the appellee, purchaser, was entitled to a judgment upon the facts viewed in the best possible light for the appellant's case.
The appellee, Robert Richter Hotel, Inc., purchased, under a conditional sales contract, 51 television sets from a distributor, Frank Rogers, Inc. The sets were installed in appellee's Hotel. Frank Rogers, Inc. assigned the conditional sales contract to the appellant, the National State Bank of Newark. The Bank notified the Hotel that the Bank was the assignee of the contract and the Hotel acknowledged notice of the assignment. After the initial payments, the Hotel made all payments to the Bank.
Approximately one month later the Hotel informed Frank Rogers, Inc. (the dealer) that the Hotel had been sold and that the dealer should pick up all the television sets. The receipt from the dealer stated that Frank Rogers, Inc. was storing the sets as an accommodation to the Hotel. Having returned the sets to the dealer, the Hotel stopped making payment on the assigned contract. The Bank then contacted the Hotel, and when informed of the disposition of the sets, made it clear that it continued to look to the Hotel for payment of the contract. The Hotel immediately made payments to the Bank on the contract. The Bank did not try to get in touch with the dealer to determine the status of the sets. Motorola informed the Hotel that the franchise agreement between Motorola and Frank Rogers, Inc. had been terminated. Under pressure from the Bank, the Hotel made several additional payments to the Bank.
Frank Rogers, Inc. sold the television sets and has accounted to no one for the proceeds. Shortly thereafter Frank Rogers, Inc. closed its place of business. The appellee, Hotel, thereafter stopped making payment on the conditional sales contract and the Bank filed suit.
The Hotel's defense was bottomed on its contention that the plaintiff Bank could not, under the facts herein, be a bona fide assignee and any defense the Hotel had against the vendor-assignor, Frank Rogers, *323 Inc., was good against the Bank. There was no evidence to contradict the following facts as to Rogers: That the television sets had been returned to Rogers with actual notice to the Bank; subsequently the sets were sold by Rogers; the proceeds thereof were used by Rogers for its own benefit; and the Hotel never received the proceeds from the sale of the sets.
The only question upon this appeal from a judgment based upon a directed verdict for the defendant at the conclusion of all the evidence is whether the evidence is susceptible to a reasonable interpretation which would support a jury verdict for the plaintiff. See Burch v. Strange, Fla.App. 1961, 126 So.2d 898. We think that it is subject to such an interpretation.
The receipt taken by the appellee for the sets is consistent with appellee's continued ownership of the sets. The appellee recognized the assignment of the contract because, after receiving notice of the assignment, it made payments to the assignee. The appellee's defense, in substance, is that it returned the goods to the vendor and should not be required to pay. This return of the goods occurred after appellee had received notice of the assignment and had begun to make payments to the assignee. The appellee could prevail by showing that the vendor was acting for the assignee in receiving the goods. See Commercial Credit v. Neel, 91 Fla. 505, 107 So. 639 (1926), where the court held that in the absence of evidence to the contrary, the vendor-assignor has no authority to act for the assignee of a conditional sales contract. See also Baer v. General Motors Acceptance Corporation, 101 Fla. 913, 132 So. 817 (1931), and Cutler Gate Bldg. Corp. v. United States Leasing Corp., Fla.App. 1964, 165 So.2d 207. It is true that the evidence would sustain a close association between the Bank, the manufacturer of the sets and the dealer,[1] but the control of the Bank over the dealer, if such existed, is not clear. Control is the key factor. It cannot be said as a matter of law that the Bank exercised such control over the dealer as to make the dealer in this case the agent of the Bank.
The appellee has argued that this case is governed by the principle adopted in Mutual Finance Co. v. Martin, Fla. 1959, 63 So.2d 649, 44 A.L.R.2d 1, where the Court held that a finance company exercised such control over a transaction that it could not be considered a holder in due course. The control exercised by the Bank in the instant case is not as clear as that set forth in Mutual Finance Co. v. Martin. Furthermore, the facts in the two cases are readily distinguishable, and the Courts express limitation of its decision to the peculiar facts of the case renders the Mutual Finance case of doubtful value as guiding precedent in the instant case.
Reversed and remanded for a new trial.
NOTES
[1] The Hotel relies upon a three-party agreement between Motorola, Frank Rogers, Inc. and the Bank, wherein it is agreed that there shall be partial reimbursement from Motorola to the Bank up to 20% of the Bank's losses in every block of $1,000,000 that the Bank discounts in regard to Motorola TV sets conditionally sold by Frank Rogers, Inc. In addition, the contract provided: (1) the Bank would obtain documents in compliance with applicable laws and thereafter do whatever necessary to perfect the liens or title to the equipment; (2) with Motorola's written consent, the Bank had the right to make extensions of time for installment payments; (3) Rogers was required to furnish to Motorola, in duplicate, periodic financial statements, etc.; (4) Motorola could inspect the Rogers' books; (5) Rogers was prohibited from declaring dividends, making distribution or retiring any of its stock, making loans or advances to any person excluding advances to salesmen, not in excess of $1,000.00, hypothecating any of its assets, in any way disposing of any of its assets except in the ordinary course of business, borrowing money, paying any salary above $15,000.00 a year, making any purchases, except for purchase for resale, in excess of $1,000.00 or merging or consolidating without the written consent of Motorola; (6) Motorola could designate a member of the board of directors of Rogers.