WOOD & CO. et al. v. STATE ex rel.
JOHNSON, Bank Com'r.

No. 27286.    June 7, 1938.

J. D. Lydick, Curtis P. Harris, and Roscoe C. Arrington, for plaintiffs in error.

Houston E. Hill and James P. Hughes, for defendant in error.

GIBSON, J.  This is a suit upon a promissory note by the state of Oklahoma on the relation of the Bank Commissioner, as plaintiff, against Wood & Company, a corporation, Roy Wood, and W. P. Wood, Jr., as defendants, in the district court of Pottawatomie county, Okla.  The Bank Commissioner is acting as liquidator for the insolvent Canadian Valley Bank of Asher, Okla.  The parties shall be referred to as they appeared in the trial court.

The defendants admit the execution of the note, but assert absence of consideration.  Upon trial the plaintiff introduced the note and rested, and upon the conclusion of the defendants' evidence the trial court sustained a demurrer to defendants' evidence and directed judgment for plaintiff.  From this judgment the defendants appealed.

The following situation is disclosed by defendants' evidence.  In 1932 H. T. Douglas was president of the Shawnee National Bank, executive vice president of the Citizens Loan & Investment Company of Shawnee, and president of the Canadian Valley Bank of Asher.  Since 1904 Wood & Company had been borrowing money from the Douglas banks.  Roy Wood, as agent of the company, would anticipate the financial needs of the company at various times during the year and go to Douglas at the Shawnee National Bank, where defendant company carried its principal account, and execute a number of promissory notes in varying amounts up to $5,000.  Douglas would then place these notes in the various Douglas banks.

In May, 1932, Wood & Company so executed and delivered to Douglas, at the Shawnee bank, $40,000 in promissory notes.  These were left with Douglas with the understanding that those which were not used as renewal notes would be placed in some of the Douglas banks as soon as possible and Wood & Company's account at the Shawnee bank would be credited with the proceeds.  Douglas stated that it would take two or three weeks for the banks to absorb the notes for the additional funds.

On May 26th the cashier of the Canadian Valley Bank of Asher received a cash letter enclosing two of the notes in the sum of $2,500 each, due August 23, 1932, with a draft attached on the Canadian Valley Bank, drawn by Douglas as vice president of the Citizens Loan & Investment Company, in favor of said investment company for $5,000, with statement that the Canadian Valley Bank's account with the Shawnee National Bank had been charged with the amount of the draft. The interest or discount on the two notes was paid by the Citizens Loan & Investment Company.

When, in August of that year, Wood & Company needed to renew certain due notes and to procure further funds, Roy Wood went to Douglas and executed $35,000 in new notes. All notes were drawn with Wood & Company as maker, payable to the company, and indorsed in blank by Wood & Company and Roy Wood and W. P. Wood, Jr. At the time Roy Wood executed these notes for the company in August, he knew that $15,000 of the May notes had not been placed by Douglas, or, at least, that the company had not received credit for the proceeds of the notes. He did not ask Douglas where these notes were or return them, because, so he testified, the company was going to take up renewal and new paper with those notes. Douglas advised him that "he thought his bank would be ready to place those most any day we called for them." Douglas assured Wood that the Douglas banks could handle all of the notes soon, since fall was coming on, and, in line with this suggestion, tried to dissuade Wood from negotiating a separate loan with the Shawmut Bank of Boston, Mass.

Shortly after receiving these August notes, Douglas delivered the note sued on to the cashier of the Asher bank, stating that it was a renewal of the two notes in the sum of $2,500 each. The two original notes were returned to Douglas at the Shawnee bank.

Douglas had complete authority to purchase any commercial paper which he desired for the Canadian Valley Bank and was the only officer authorized to negotiate loans or purchase commercial paper in excess of $250. He carried on his transactions with his various banks at or through his Shawnee bank. The defendants did not receive the proceeds of these notes or know of the transaction until after the failure of the bank. The defense established absence of consideration for the note. The Bank Commissioner here admits failure of consideration, but contends that the defendants are estopped from maintaining this defense because of their conduct. Apparently the trial court was of this opinion, although the defendants insist that, since the plaintiff did not plead estoppel, it cannot now assert it. It is true the plaintiff did not plead estoppel, but at the conclusion of the testimony plaintiff moved to amend the pleadings to conform with the proof on this point. The trial court deemed this unnecessary. We need not pass upon that. As a general rule estoppel in pais should be pleaded with certainty and particularity. Bunker v. Harding, 70 Okla. 263, 174 P. 749.

In State ex rel. Barnett, State Bank Com'r, v. Austin et al., 182 Okla. 524, 78 P.2d 797, this court said:

"It is contended that defendant, having renewed the note, is estopped as a matter of law from alleging failure of consideration.

"The question of estoppel was not raised in the trial court."

It may be that it is not necessary to plead estoppel where the evidence of both plaintiff and defendant proves sufficient facts to constitute estoppel. See Grand Valley Water Users' Ass'n v. Zumbrunn (C. C. A.) 272 Fed. 943.

The rule relied on here is substantially the same as that relied on in the Oklahoma case just cited.

"That one who gives a note in renewal of another note, with knowledge at the time of a failure of consideration for the original note, or false representations in procuring the note, waives such defense and cannot set it up to defeat recovery on the renewal note.

"This necessarily involves the question of fact whether defendant knew at the time of renewal or should have known of the fraud." State ex rel. Barnett v. Austin, supra.

If upon executing the renewal note, the maker does not have actual knowledge of the absence of consideration, but could discover the facts by exercise of ordinary diligence, and from them ascertain his rights, it becomes his duty to make such inquiry and investigation before executing the renewal note, and if he fails to do so he is as much bound as if he had actual knowledge thereof. Fipps v. Stidham, 174 Okla. 473, 50 P.2d 680; Security National Bank v. Bohnefeld, 131 Okla. 66, 267 P. 631;

Tudor v. American Investment Co., **163** Okla. 274, 21 P.2d 1056.

It is obvious from the testimony that the defendants did not have actual knowledge of Douglas' misconduct in appropriating the proceeds of the first two notes, but they did know $15,000 of the notes had not been accounted for. There is no evidence that the company actually intended to renew notes without consideration, and the question of whether Roy Wood, as the active agent of Wood & Company, exercised ordinary diligence or by the exercise of ordinary diligence could have discovered the facts and circumstances disclosing the absence of consideration is one of fact. Fipps v. Stidham, supra. In reviewing this cause on appeal, if there was evidence tending to prove sufficient facts to sustain a verdict in favor of the defendant, if the jury had so found, then the trial court erred in sustaining the demurrer and directing a verdict in favor of the plaintiff. Chestnutt-Gibbons Grocer Co. v. Consumers' Fruit Co., 44 Okla. 318, 144 P. 591; Holmes v. Carey, Lombard, Young & Co., 169 Okla. 97, 36 P.2d 8.

Viewing the testimony, as a whole, in the light most favorable to the defendants, the evidence was of such a nature that the trial court erred in not submitting the case to the jury. Wingate v. Render, 58 Okla. 656, 160 P. 614; Continental Ins. Co. v. Chance, 48 Okla. 324, 150 P. 114.

The defense of absence of consideration may be raised against any person not a holder in due course. Section 11327, O. S. 1931, 48 Okla. St. Ann. sec. 75:

"Absence or failure of consideration is matter of defense as against any person not a holder in due course."

Section 11351, O. S. 1931, 48 Okla. St. Ann. sec. 122:

"A holder in due course is a holder who has taken the instrument under the following conditions: First. That it is complete and regular upon its face. Second. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact. Third. That he took it in good faith and for value. Fourth. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

The defendants contend that when they introduced evidence raising the question of absence of consideration the burden shifted to the plaintiff to prove it came within the above statute as a holder in due course.

The cases of Hamil v. Joyner, 103 Okla. 216, 229 P. 768; Stricker v. Billingsley, 169 Okla. 145, 36 P.2d 474; McKone v. McConkey, 77 Okla. 3, 185 P. 520; Central Nat. Bank v. Pyeatt, 97 Okla. 28, 222 P. 533, and Wallace v. First National Bank, 167 Okla. 563, 31 P.2d 135, indicate that absence of consideration is to be deemed a defective title within the purview of our negotiable instrument law.

It is contended, however, that this court has incorrectly construed the statute shifting the burden of proof (sec. 11358, O. S. 1931, 48 Okla. St. Ann. sec. 129), and that it has overlooked the correct rule which is determinable from a consideration of such section only in connection with section 11354, O. S. 1931, 48 Okla. St. Ann. sec. 125, which defines defective title. Failure of consideration, it is urged, does not come within the meaning of these sections. See 3 R. C. L. 1044. But we do not deem it necessary here to review the former decisions to inquire into their correctness.

We think there is sufficient evidence from which a reasonable inference may be drawn that the transaction here was directly had with the Asher bank acting through its president. The mere fact that Douglas was at the Shawnee bank would not preclude this idea. His fraud in getting his investment company draft paid would not be imputed to the Wood Company. He knew, and therefore his Asher bank knew, that there was no consideration for either the first notes or the renewal note. If the jury found the transaction was in reality one directly with the Asher bank, so far as the notes were concerned it would be a defense.

But, be that as it may, if there was such a relationship of agency existing between the Asher bank and Douglas, and the notes were purchased by the Asher bank in bad faith, then a defense existed. Douglas, under the evidence here, was sole agent of the Asher bank in purchasing the notes. His knowledge of lack of consideration is apparent. The fact that his act was fraudulent for his own benefit does not help the Asher bank. This court has adopted the majority view, when, in Aetna Casualty & Surety Co. v. Local Bldg. & Loan Ass'n, 162 Okla. 141, 19 P.2d 612, it quoted with approval:

" 'The rule that, where an agent receives notice, it is not imputed to the principal, if the agent is engaged in committing an independent fraudulent act upon his own account, does not apply, where the agent is the sole representative of the principal in

the transaction, and does not deal with the principal or with any other agent acting for him; in such case the knowledge of agent being imputed to principal.' "

In the earlier case of Tinley v. Ammerman, 150 Okla. 215, 299 P. 918, this court expressly adopted the opinion of the Washington court in the case of Gates v. Gregory, 157 P. 470, which held:

"The principal is regarded as acting with knowledge of a fraudulent act when represented solely by an agent who possesses such knowledge."

The evidence was sufficient to go to the jury on the issues thus presented. It was, therefore, error to sustain the demurrer to the defendants' testimony.

The case is reversed, with directions to grant a new trial.

RILEY, PHELPS, CORN, and HURST, JJ., concur.