## INTERNATIONAL FINANCE CORPORATION v. LeROY W. RIEGER.

137 N. W. (2d) 172.

August 27, 1965—No. 39,593.

*Thornsjo, Smith & Johnson* and *Gary E. Persian,* for appellant.

*Vennum, Newhall, Ackman & Goetz* and *Melvin I. Orenstein*, for respondent. ·

THOMAS GALLAGHER, JUSTICE.

International Finance Corporation instituted this action against LeRoy W. Rieger on his promissory note dated October 13, 1961, originally in the sum of $24,190 to Coin Operated Laundry Sales Company, a copartnership comprised of J. E. Whelan and Holland Williams. The whereabouts of Whelan and Williams was unknown to the parties at the time of the commencement of the trial and no service could be made upon them personally. The note was made in connection with defendant's purchase from Coin Operated Laundry Sales, as dealer, of four 2-unit Standard dry-cleaning machines, model Twin-Ette.

The purchase of these machines, which defendant intended to use in an automatic laundry business in certain commercial property he owned in Minneapolis, was covered by a conditional sales contract also dated October 13, 1961, signed by the dealer as *seller* and by defendant as *purchaser*. This contract set forth the terms of the transaction which manifested the purchase price of the machines as $26,000 and acknowledged defendant's initial payment thereon of $5,500, with a resultant balance of $20,500. To this balance, the contract recited, the dealer had added the sum of $3,690 designated as "time price differential," which accordingly resulted in an unpaid balance of $24,190 on the contract.

The note, the conditional sales contract, and certain other documents evidencing the sale were transferred or assigned to plaintiff by the dealer on November 20, 1961, in consideration of plaintiff's payment to the dealer of $18,079. Subsequently, the dealer advanced monthly payments on the note and contract totaling $3,360, leaving $20,830 unpaid on the face of the contract, although plaintiff's actual investment therein at that time was only $14,719. In its complaint, however, plaintiff sought judgment against defendant for the full amount of the note—$24,190—plus attorney's fees.

As a defense to the action defendant denied that plaintiff was holder of the note in due course and alleged in substance that it took the note

and conditional sales contract subject to such defenses as defendant might have against the dealer; that the dealer had fraudulently represented to defendant that each of the machines sold to him had a capacity of 10 pounds for dry-cleaning purposes, when in fact their capacity was only 7 pounds for such purposes, so that in consequence the machines were of less value than machines having a 10-pound capacity; and that after discovering these misrepresentations, defendant had rescinded the contract by tendering the machines back to the dealer and to plaintiff and demanding from them in return the note and conditional sales contract as well as the $5,500 downpayment, which demands had been refused.

As a second defense defendant alleged that he had agreed with the dealer at the time he signed the note and contract that there would be no obligation on his part thereunder until such time as the machines were installed on his premises to his satisfaction in accordance with the dealer's representations; that it had been agreed further that such installation was not to be deemed complete until defendant had executed a delivery and installation certificate required by plaintiff, wherein defendant would acknowledge that the machines had been installed to his satisfaction; that the dealer had not performed the conditions described in that the machines had never been installed so as to work properly; that their original installation had been prevented by the building inspector of Minneapolis and even after defendant had undertaken the expense of installing them in compliance with the building inspector's requirements they had been defective and had not operated properly; that in consequence the note had never become effective and defendant had frequently advised both the dealer and plaintiff to this effect and had demanded of them that they remedy the defects and comply with the representations of the dealer or otherwise remove the machines and return to him the downpayment, the promissory note, and the conditional sales contract, but such demands had at all times been refused. In this defense defendant claimed that no delivery and installation certificate had ever been signed by him and that a purported certificate delivered by the dealer to plaintiff with the note and conditional sales contract had been a forgery.

Based upon findings herein set forth, the court determined that because defendant had used some of the machines for a period of 10 months after their failure to operate properly or to meet the dealer's representations he was estopped from rescinding the agreement. The court then found that defendant had not made the $5,500 downpayment referred to in the contract and determined that plaintiff was entitled to judgment against him for $15,330 with interest; for $2,299.50 as attorney's fees; and for its costs and disbursements.

On appeal defendant contends (1) that plaintiff's participation in the sale, including its actions in furnishing previously for defendant's signature the printed forms with its name thereon; in requiring a delivery and installation certificate signed by defendant reciting that the machines had been satisfactorily installed; and in investigating defendant's credit prior to purchasing the note and contract, established that plaintiff was not a holder of the note in due course; (2) that the court erred in holding that defendant was estopped from rescinding the contract because of his use of the machines after his demand that plaintiff and the dealer take them back was refused; (3) that defendant's delivery of the note and contract having been conditioned upon the dealer's performance of the sales contract as agreed, they had never become effective because there had been no such performance; and (4) that evidence did not justify a finding that defendant had not made the downpayment of $5,500 on the contract at the time the machines were purchased.

It is not disputed that the printed forms for the promissory note, the conditional sales contract, and other documents which evidenced the sale had been furnished to the dealer by plaintiff on or about October 1, 1961, and that plaintiff's name was printed on such forms; that the dealer had advised defendant that the finance company would require a delivery and installation certificate signed by him after the satisfactory installation of the machines; and that it was plaintiff's policy to require such certificates when financing the purchase of machines and equipment such as were involved here.

Plaintiff's representative, John McCormick, testified that as vice president of plaintiff, he had had no contact or conversation with defend-

ant prior to plaintiff's purchase of the note, conditional sales contract; and other documents on November 20, 1961; and that his first personal contact with defendant had been about a month later when he was advised by defendant that the equipment had not been installed. The dealer advised him that this was because of objections of the city building inspector.

Gordon Paske, plaintiff's president at the time of this transaction, testified that the forms used by the dealer had been furnished by the plaintiff; that investigation had been made by plaintiff as to defendant's credit before plaintiff purchased the note and conditional sales contract; and that in accordance with its practice in transactions of this kind, plaintiff had advised the dealer that it would not purchase the note and conditional sales contract unless they were accompanied by a delivery and installation certificate signed by defendant to the effect that the property sold had been delivered and installed to his satisfaction.

The trial court in substance found:

That the $5,500 initial payment on the purchase had not been paid by defendant to the dealer but that the contract had indicated such payment so that the amount due for the purchase of the machines could be more readily financed with plaintiff;

That the dealer did represent to defendant that the machines would carry a load of from 8 to 10 pounds but that such representations were false, in that the machines would carry only a load of 7 pounds, but that said representations were not included in the purchase order or the conditional sales contract and were unknown to plaintiff;

That the equipment purchased by defendant was delivered to him on November 6 or 7, 1961, but that from the first defendant experienced difficulties with such machines, in that the city inspector would not permit their installation without certain modifications, so that they were not installed until about a month after their delivery;

That the note and conditional sales contract were assigned from the dealer to the plaintiff about November 20, 1961, and that prior thereto plaintiff had had no contact with defendant;

That on December 20, 1961, defendant had informed a representa-

tive of plaintiff that the machines had not been properly installed, and that thereupon plaintiff's representative had contacted the dealer, and that such dealer had then informed plaintiff that the building inspector would not permit installation of the machines but that it would be taken care of shortly;

That after this date defendant had made a number of complaints to the dealer and that at one time the dealer and a representative of plaintiff had called upon defendant in an effort to adjust defendant's claims with respect to the installation and operation of the machines, but that the parties could not reach an agreement thereon and that at that time defendant stated to the dealer and to plaintiff's representative that if the machines were not placed in satisfactory condition they should be picked up by them and the note and conditional sales contract involved in the sale returned to defendant; that the dealer and plaintiff had thereafter failed to take any action on such machines but had left them with defendant who had thereafter operated some of them for a period of about 10 months;

That in financing sales of this kind it is plaintiff's policy to require that the dealer furnish it with a signed certificate of the purchaser to the effect that the property sold has been delivered and installed, and that in the instant case plaintiff required such a certificate from the dealer but the certificate delivered to it by the dealer at the time the contract and promissory note were purchased by the plaintiff had been forged with defendant's signature.

■ The findings with respect to the defenses of fraud, misrepresentation, and forgery interposed by defendant and the order for judgment in plaintiff's favor for an amount substantially less than that remaining unpaid upon the note manifest the court's determination that plaintiff was not a holder in due course but took the note subject to such defenses and to the defense of failure of consideration as well. Minn. St. 335.221.[1]

---

[1] Minn. St. 335.221 provides: "In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable. A holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affect-

■ This is consistent with numerous decisions from various jurisdictions, including Minnesota, which hold that, where a note has been executed concurrently with a conditional sales contract for the sale of equipment to be installed to the buyer's satisfaction, or otherwise in compliance with contract terms, an assignee of the note and conditional sales contract, who has participated in the transaction from its origin so as to have acquired knowledge of the conditional liability of the purchaser or maker of the note, does not become a holder of the note in due course. First & Lumbermen's Nat. Bank v. Buchholz, 220 Minn. 97, 18 N. W. (2d) 771; Commercial Credit Co. v. Childs, 199 Ark. 1073, 137 S. W. (2d) 260, 128 A. L. R. 726; Commercial Credit Corp. v. Orange County Machine Works, 34 Cal. (2d) 766, 214 P. (2d) 819; Mutual Finance Co. v. Martin (Fla.) 63 So. (2d) 649, 44 A. L. R. (2d) 1; Todd v. State Bank, 182 Iowa 276, 165 N. W. 593, 3 A. L. R. 971; Von Nordheim v. Cornelius, 129 Neb. 719, 262 N. W. 832; Buffalo Industrial Bank v. De Marzio, 162 Misc. 742, 296 N. Y. S. 783, 128 A. L. R. 732; Federal Credit Bureau, Inc. v. Zelkor Dining Car Corp. 238 App. Div. 379, 264 N. Y. S. 723; State Nat. Bank v. Cantrell, 47 N. Mex. 389, 143 P. (2d) 592, 152 A. L. R. 1216; Washington Trust Co. v. Keyes, 79 Wash. 61, 139 P. 638; Caldwell v. Roach, 44 Wyo. 319, 12 P. (2d) 376; Allied Bldg. Credits v. Ellis (Tex. Civ. App.) 258 S. W. (2d) 165. See, 39 Minn. L. Rev. 775, comment on p. 778.

The basis for this rule is covered by the decision of this court in First & Lumbermen's Nat. Bank v. Buchholz, *supra,* which involved a Wisconsin transaction relating to the sale and installation of an automatic coal burner and electrical equipment. There, after noting the absence of any Wisconsin decisions on the issue,[2] this court expressed

---

ing the instrument, has all the rights of such former holder in respect of all parties prior to the latter."

[2] In a later decision, Implement Credit Corp. v. Elsinger, 268 Wis. 143, 66 N. W. (2d) 657, 67 N. W. (2d) 873, the Wisconsin Supreme Court held that the fact that plaintiff finance company supplied the blank forms for the note and conditional sales contract did not in itself make the dealer the plaintiff's agent nor make the plaintiff a participant in the original transaction so as to

the governing principle as follows (220 Minn. 102, 18 N. W. [2d] 774):

"* * * There is ample authority * * * for the proposition that where one takes as endorsee and assignee a promissory note and a conditional sales contract representing a transaction for which the note was given and before the consideration has passed, he takes such note with notice of a condition to liability on the instrument and is prevented from becoming a holder in due course. * * *

"In such event, the two instruments are to be construed together as a part of the same transaction. So construed, the promise to pay, although apparently unconditional on the face of the note, is no longer unconditional, and payment is subject to the conditions of the contract being fulfilled. To suggest that under such circumstances one who takes the contract is entitled to its benefits and is not burdened with its obligations would be a perversion of justice."

This rule was similarly expressed in Commercial Credit Corp. v. Orange County Machine Works, 34 Cal. (2d) 766, 771, 214 P. (2d) 819, 822,[3] as follows:

"When a finance company actively participates in a transaction of this type from its inception, counseling and aiding the future vendor-payee, it cannot be regarded as a holder in due course of the note given in the transaction and the defense of failure of consideration may properly be maintained. Machine Works never obtained the press for which it bargained and, as against Commercial, there is no more obligation upon it to pay the note than there is to pay the installments specified in the contract."

We recognize that other decisions hold that where the assignee of a

---

prevent the finance company from being a holder in due course of such note. The opinion does not extend to consideration of a situation involving the additional facts present in the instant case, particularly with respect to knowledge on the part of the finance company that the maker's obligation on the note was conditional.

[3] In Mann v. Leasko, 179 Cal. App. (2d) 692, 4 Cal. Rptr. 124, the rule expressed in the cited case was recognized but the facts distinguished.

note and concurrent conditional sales contract has knowledge prior to purchase that the contract is for goods warranted or that the consideration is future or contingent, this does not prevent the assignee from becoming a holder in due course if he has no knowledge of the breach or nonperformance of the contract provisions prior to his acquisition of the note and contract.[4] Implement Credit Corp. v. Elsinger, 268 Wis. 143, 66 N. W. (2d) 657; Commercial Credit Co. v. M. McDonough Co. 238 Mass. 73, 130 N. E. 179; Northwestern Finance Co. v. Crouch, 258 Mich. 411, 242 N. W. 771; B. A. C. Corp. v. Cirucci, 131 N. J. L. 93, 35 A. (2d) 36; Mann v. Leasko, 179 Cal. App. (2d) 692, 4 Cal. Rptr. 124. These decisions for the most part have reference to situations where an assignee of a note has knowledge of the executory consideration for it rather than knowledge that conditions are to be performed by the payee before liability on the note attaches to the maker. See, First & Lumbermen's Nat. Bank v. Buchholz, *supra;* McClellan v. Morris, 71 Colo. 304, 206 P. 575; Hughes v. Donlon, 149 Tenn. 506, 261 S. W. 960, 35 A. L. R. 506; Commonwealth Bank & Trust Co. v. Limburger (Tex. Civ. App.) 199 S. W. 816; Caldwell v. Roach, 44 Wyo. 319, 12 P. (2d) 376; Annotation, 44 A. L. R. (2d) 46, 48, 130. Further, none of them involves a forged certificate of delivery and installation, as does the instant case, and which forged certificate, as indicated, could not have eliminated the condition upon which the defendant's liability depended. 11 Am. Jur. (2d) Bills and Notes, § 460; Annotation, 44 A. L. R. (2d) 50.

■ Here the evidence sustains the implicit finding that plaintiff had knowledge that the note evidenced the amount due on the conditional sale of the equipment and that the dealer was required to complete the delivery and installation of such equipment in accordance with con-

---

[4] Minn. St. 335.201 provides: "A holder in due course is a holder who has taken the instrument under the following conditions:

"(1) That it is complete and regular upon its face;

"(2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"(3) That he took it in good faith and for value;

"(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

tract provisions and in compliance with the ordinary sales warranties always present in sales of this kind before defendant would become liable thereon. It disclosed that prior to the sale plaintiff had furnished the dealer with the forms to be executed by defendant with instructions to the dealer printed thereon with reference to their completion and execution; that plaintiff had instructed the dealer to obtain for it from defendant a certificate signed by defendant to the effect that the equipment had been delivered and installed and had been accepted as satisfactory by defendant, and that plaintiff's purchase of the note and contract was not to be consummated until this had been done.

It is undisputed that defendant delivered the note and conditional sales contract to the dealer conditionally and was to become obligated thereon only after the dealer had properly performed the contract as evidenced by defendant's signature on the delivery and installation certificate. From this it seems clear that the dealer became plaintiff's agent for the purpose of obtaining the signed certificate from defendant, which all parties understood was to evidence proper performance of the sales contract. Accordingly, when the dealer furnished plaintiff with the forged certificate before delivery and installation had been made, the condition to defendant's liability remained unperformed and unchanged, and plaintiff, by virtue of its agency relationship with the dealer, must be deemed to have had full knowledge of this at the time it purchased the note and contract. 11 Am. Jur. (2d) Bills and Notes, §§ 478, 479; Wood & Co. v. State, 183 Okla. 71, 80 P. (2d) 261; Bowen v. Mt. Vernon Sav. Bank, 70 App. D. C. 273, 105 F. (2d) 796.

These facts are quite similar to those presented in Allied Bldg. Credits v. Ellis (Tex. Civ. App.) 258 S. W. (2d) 165, 166, where the court stated:

"* * * As a *condition precedent* to its purchase of the note, it required the payee * * * to secure the execution of an additional instrument by the maker, certifying that the *material for which the note was given had been delivered and installed and all work fully completed.* * * * It was upon the faith and strength of this additional instrument, and not upon the note, that the note was purchased.

"* * * Appellant by its course of action becomes an *original party*

*to the additional instrument;* and forfeits what might otherwise have been its status as a holder in due course. * * *

"Here the Completion Certificate was a forgery. As to Duffey [the payee], Appellees had the defense of partial failure of consideration. Appellant having knowledge of and requiring the additional instrument, becomes an original party to the additional instrument; lost what might otherwise have been his status as a holder in due course; and is bound by any defenses which Appellees had as to Duffey, as well as any defenses that arise from the forgery."

It would follow that the evidence described would sustain a finding that plaintiff was not a due course holder of the note but took it subject to any defenses which defendant might have against the dealer.

■ As stated above, one of the defenses interposed by defendant was that of rescission based upon the dealer's misrepresentation and fraud. The court determined that although there had been fraud and misrepresentation in the sale, defendant had waived this defense by retaining possession of the equipment and using part of it. Likewise, the court determined that the certificate of delivery and installation delivered by the dealer to plaintiff had been forged. But even if the evidence would sustain the conclusion that the right to rescind had been waived by defendant, his defense of damages for misrepresentation and fraud as well as his defense of failure of consideration should have been considered and determined. Because the court had concluded that defendant was limited to his defense of rescission, it limited his evidence with reference to his other defenses. Possibly for this reason, defendant did not expend any considerable effort in establishing his damages.

It is well settled that in an action for an amount claimed due on a sales contract an unsuccessful attempt to rescind it would not bar a claim of damages for misrepresentation. Freeman v. Fehr, 132 Minn. 384, 157 N. W. 587; Gunderson v. Halvorson, 140 Minn. 292, 168 N. W. 8; Kremer v. Lewis, 137 Minn. 368, 163 N. W. 732; Rosenquist v. Baker, 227 Minn. 217, 35 N. W. (2d) 346. On the contrary, it has been held that an unsuccessful attempt at rescission, frustrated by the seller's rejection of the buyer's offer to return the goods in return for the consideration, does not necessarily eliminate this defense, Bergstrom v.

Pickett, 148 Minn. 224, 181 N. W. 343; Proper v. Proper, 183 Minn. 481, 237 N. W. 178; Perkins v. Meyerton, 190 Minn. 542, 251 N. W. 559, particularly where the court may order restoration to status quo in some practical way. See, I. L. Corse & Co. v. Minnesota Grain Co. 94 Minn. 331, 102 N. W. 728; Proper v. Proper, *supra;* 4 Dunnell, Dig. (3 ed.) § 1810.

So here, because of some uncertainty on our part as to the issues considered at the trial, we feel the case should be remanded for a new trial wherein all issues and defenses may be considered and wherein specific findings may be made thereon. Prior thereto, defendant should elect whether his defense is to rest upon rescission or upon damages for misrepresentation and fraud; or otherwise upon conditional delivery and failure of consideration, so that the court may be guided with respect to the evidence to be submitted. Of course, if defendant establishes that he is not indebted to plaintiff for the full amount of the note, attorney's fees should not be added to the amount found due thereon.

Reversed and remanded for a new trial in accordance with this opinion.