ROBERT N. MELBO, d. b. a. LINDSAY PERFECTOMATIC SOFT WATER SERVICE, v. RICHARD RINN AND ANOTHER.

157 N. W. (2d) 842.

April 5, 1968—Nos. 40,320, 40,321.

*C. Stanley McMahon,* for appellant.

*Dennis A. Challeen,* for respondents Rinn.

*Alton E. Bergh,* for respondent Shank.

*Dorsey, Marquart, Windhorst, West & Halladay, William A. Whitlock,* and *Charles J. Hauenstein,* for First National Bank of Minneapolis, amicus curiae.

*Mackall, Crounse, Moore, Helmey & Holmes* and *Clay R. Moore,* for Community Credit Company, amicus curiae.

*James S. Eriksson* and *Clarence O. Holten,* for James Talcott, Inc., and Northern Finance Corporation, amicus curiae.

*Faegre & Benson, James A. Halls,* and *Jack W. Greene,* for Northwestern National Bank of Minneapolis, amicus curiae.

*Maun, Hazel, Green, Hayes, Simon & Aretz* and *Jerome B. Simon,* for Industrial Credit Company, amicus curiae.

*Briggs & Morgan, Richard H. Kyle,* and *Ronald E. Orchard,* for Minnesota Bankers Association, amicus curiae.

OTIS, JUSTICE.

Two actions on promissory notes against separate defendants have been consolidated. The notes were executed in connection with sales which defendants allege were fraudulently induced. The court found that plaintiff took the notes with notice they were usurious and that he was not a holder in due course. It directed verdicts in favor of defendants. Plaintiff appeals from the judgments and from orders denying his motions for a new trial.

At the time of these transactions, plaintiff was engaged in the business of selling and installing water softeners under the trade name "Lindsay Perfect-O-Matic." In the fall of 1963 the notes were acquired as a result of sales made by one John Morrison, a dealer. Plaintiff testified that Morrison had no business relationship with him, either as an employee, agent, or salesman, and that plaintiff had no knowledge of the details of the transactions beyond what appeared on the face of the notes.

With respect to the *Rinn* contract, Morrison purchased Lindsay equipment from plaintiff and plaintiff had it installed on Rinn's farm. Morrison

took a note from Rinn, dated October 26, 1963, in the sum of $980, payable in 60 monthly installments. No payee was shown. It represented a purchase price of $700 plus 8-percent interest for the 5-year period, but the rate and amount of interest were not apparent on its face. Morrison promptly delivered the note to plaintiff who paid Morrison the $700 and discounted it at the Coulee State Bank. When the bank was unable to collect from Rinn, the note was returned to plaintiff. Since the rate of interest was not reduced as principal payments were made, interest on the declining balance exceeded 8 percent per annum.

With respect to the *Shank* transaction, the same procedure was followed except that Morrison sold an "Inland Marine" water softener which he did not acquire from plaintiff. The Shank note, dated November 19, 1963, was in the face amount of $1,050, payable in 60 monthly installments. It represented an undisclosed purchase price of $1,595 less a trade-in allowance of $845, plus 8-percent interest on the entire principal. It was also delivered by Morrison to plaintiff without showing a payee. Plaintiff paid Morrison the purchase price and assigned it to the Coulee State Bank, discounted by the amount representing interest, which also exceeded 8 percent per annum. Again the bank, being unable to collect the note, returned it to plaintiff. These actions followed.

By way of defense, Rinn and Shank alleged fraud and misrepresentation with respect to the sale of the water softeners they purchased from Morrison. The lawsuit was tried on that theory. Plaintiff claimed to be a holder in due course, without knowledge of such misrepresentations, and insulated from the defense of fraud.

Defendants raised the issue of usury for the first time after all the evidence was in. This resulted in plaintiff's disclosure that he held conditional sales contracts which recited a time price differential reflected by interest in excess of 8 percent called for in the notes. Plaintiff claimed surprise, protesting with justification that the issue of usury had not been pleaded or litigated.[1] Nevertheless, the court held that plaintiff was not a

---

[1] Rule 8.03, Rules of Civil Procedure, provides that illegality must be pleaded as an affirmative defense. Hutchins v. United States Auto. Ins. Exch. 170 Minn. 273, 276, 212 N. W. 451, 452.

holder in due course and that the notes were tainted with usury and invalid under Minn. St. 334.01, 334.03, and 334.05.[2]

In his motion for a new trial on the grounds of newly discovered evidence, plaintiff attached copies of the conditional sales contracts, each showing on its face a "time credit charge" in excess of 8 percent, and each describing plaintiff's company as vendor. In denying the motion the court held that the rule applicable to conditional sales contracts did not protect plaintiff because he was not a vendor but a lender of money who chose to proceed on the notes, and was thereby foreclosed from relying on the validity of the time price differential contained in the conditional sales contracts. However, because the contracts disclosed a "time credit charge" in excess of 8 percent, the court also took the position that plaintiff had actual knowledge of the interest rate, and hence was not a holder in due course. Since the court felt the issue had been litigated, it held that the answer could be amended to conform to the proof of usury.

We are of the opinion that it was error for the trial court to invoke Minn. St. 334.05 without affording plaintiff an opportunity to meet the defense of usury. Nowhere in the pleadings, the testimony, or in the

---

[2] Pertinent portions of these statutes are as follows:

Minn. St. 334.01. "The interest for any legal indebtedness shall be at the rate of $6 upon $100 for a year, unless a different rate is contracted for in writing; and no person shall directly or indirectly take or receive in money, goods, or things in action, or in any other way, any greater sum, or any greater value, for the loan or forbearance of money, goods, or things in action, than $8 on $100 for one year * * *."

Minn. St. 334.03. "All * * * notes * * * whereupon or whereby there shall be reserved, secured, or taken any greater sum or value for the loan or forbearance of any money * * * than hereinbefore prescribed * * * shall be void except as to bona fide purchasers of negotiable paper, in good faith, for a valuable consideration and before maturity, as hereinafter provided."

Minn. St. 334.05. "When it satisfactorily appears to a court that any bond, bill, note, assurance, pledge, conveyance, contract, security, or evidence of debt is void under the provisions of this chapter it shall declare the same to be void, enjoin any proceeding thereon, and order it to be cancelled and given up."

discussions of counsel with the court was usury mentioned until the case was ready for submission to the jury. The conditional sales contracts were never made a part of the record.

Plaintiff's status as a lender of money was not adequately established by the evidence. Whether the transaction as to plaintiff was a sale or a loan was a fact question which he had a right to litigate.

If upon a new trial it appears that the sales to Rinn and Shank reflected a bona fide time price differential, and there was in fact one price for cash and another for credit, under our decisions in Dunn v. Midland Loan Finance Corp. 206 Minn. 550, 289 N. W. 411, and Van Asperen v. Darling Olds, Inc. 254 Minn. 62, 93 N. W. (2d) 690, the sales were not usurious. In that event, whatever may have been Melbo's status as to the contracts, the notes given as evidence of them were not usurious. In re Bibbey (D. Minn.) 9 F. (2d) 944.[3] It is the rule in this situation that courts will look to the substance of the transaction and not merely to the form. If the arrangements were actually a pretense to evade the usury laws, they were invalid. Midland Loan Finance Co. v. Lorentz, 209 Minn. 278, 296 N. W. 911; Seebold v. Eustermann, 216 Minn. 566, 13 N. W. (2d) 739, 152 A. L. R. 585.

Plaintiff's role in these sales is not clear from the record now before us. In one instance Morrison sold an appliance handled by plaintiff's company, while in the other the softener sold by Morrison was supplied by a competitor. What, if any, relevance this may have as to plaintiff's status will be a matter for determination upon a retrial.

While plaintiff now seems to concede he was not a holder in due course, that is also a question which must be determined by the trial court. International Finance Corp. v. Rieger, 272 Minn. 192, 199, 137 N. W. (2d) 172, 177. The matter is therefore remanded for a new trial on all issues. Appellant shall not be allowed to tax costs or disbursements against respondents.

Reversed and remanded.

The opinion filed herein on September 1, 1967, is withdrawn and the foregoing substituted in its place.

---

[3] See, also, Annotation, 14 A. L. R. (3d) 1065, 1112.