AMERICAN PLAN CORP., APPELLEE, *v.* WOODS, APPELLANT.

[Cite as American Plan Corp. v. Woods, 16 Ohio App. 2d 1.]

(No. 9004—Decided October 1, 1968.)

**2**

*Messrs. Robins & Preston* and *Mr. Thomas J. Moyer,*
for appellee.
*Mr. L. P. Henderson,* for appellant.

DUFFEY, P. J. This is an appeal on questions of law
from a decision of the Common Pleas Court of Franklin
County reversing a decision of the Franklin County Muni-
cipal Court. Plaintiff, appellee herein, American Plan Corp-
oration, is the transferee of a cognovit note and security
agreement originally payable to Crystal Clear, Inc. The de-
fendant, appellant herein, Georgia Woods, is the maker
of the note. Crystal Clear, Inc., is a vendor of water soften-
er equipment. The Municipal Court found that appellee
was not a holder in due course and that appellant had a
complete defense. The Common Pleas Court reversed, de-
termining that appellee was a holder in due course and ap-
pellant had no applicable defense.

In 1962, Crystal Clear, Inc., approached American
Plan Corporation and offered to sell it notes which Crystal
Clear, Inc., expected to receive from purchasers of water
softeners. American Plan Corporation investigated Cry-
stal Clear, Inc., and approved the arrangement. It supplied
Crystal Clear, Inc., with notes and other forms. It estab-
lished a "carrying" charge of $215 for each note—the
amount to be charged to a purchaser as the cost of financ-
ing payments by installments. American Plan Corporation
reserved the right to refuse any note it felt was risky, and
it investigated the credit of each purchaser whose note
was offered to it. American Plan Corporation bought the
notes for the principal amount stated, *i. e.,* the amount of
the purchase price for the water softener.

With respect to the appellant's case, the trial judge
found:

"On February 21, 1963, defendant Woods, a respec-
table-appearing negro woman but clearly one with little if
any business experience or knowledge, was approached at
her home during the hours of 8:00 and 10:00 p. m. by a

representative of Crystal Clear. The next day was a holiday. In those two hours there apparently followed what is commonly called the 'hard sell.' * * *

"Woods * * * signed Exhibits 1, 2 and 3 * * * all so signed because, as she testified without contradiction, Crystal's representative was in a hurry. With equal lack of contradiction, not even a copy of any of these papers was left with Woods that night. With further equal lack of contradiction, Woods did not know she was signing or intended to sign what is claimed to be a note, cognovit or otherwise; nor to the best of her uncontradicted recollection was the Exhibit 1 'note' paper completely filled in as to the details of amount and method of payment on the right side of the face. * * *

"Five days later, February 22 to February 27, 1963, the Exhibit 1 paper was assigned without recourse to plaintiff by Crystal * * *."

The evidence is that Crystal Clear, Inc., told appellant that she was not obligated in any way to buy the water softener. The machine was to be given to appellant for "advertising" and appellee would be paid $50 for each name of a prospective customer that she supplied Crystal Clear, Inc. The $50 was to be used to pay for the machine, and any money left over was to be appellant's. Appellant sent out form letters to friends and supplied Crystal Clear, Inc., with forty names. Some of these people purchased water softeners. Appellant received $100 from Crystal Clear, Inc., which she paid to American Plan Corporation on the note. Upon this evidence the trial judge found that appellant did not intend to buy a water softener and did not know she was signing a cognovit note.

The water softeners sold by Crystal Clear, Inc., were faulty. Appellant's machine was in need of repair within one month. Other machines sold to appellant's friends also broke down soon after purchase.

The note and security agreement were both contained in one instrument and were both assigned to American Plan Corporation. It is dubious that the note was negotiable because the promise to pay was not "unconditional."

See Sections 1303.03 and 1303.04, Revised Code. The question of negotiability was not raised on appeal, and we, therefore, will not decide that question.

Assuming the note to be negotiable, two questions remain. Does American Plan Corporation have the rights of a holder in due course under Section 1303.31, Revised Code? Is appellant's defense "real" or "personal"? Fraud affecting the value of the consideration paid is fraud in the inducement and is a personal defense which may not be asserted against a holder in due course by reason of Section 1303.34, Revised Code. On the other hand, material misrepresentation affecting the nature of the instrument signed is fraud in the factum and is a real defense which may be asserted against a holder in due course.

The misrepresentation made by Crystal Clear, Inc., involved the nature and effect of the instruments signed. Thus, were it necessary for us to so find, Crystal Clear's fraud was fraud in the factum, and that defense may be asserted against appellee regardless of whether it is a holder in due course.

However, we need not stop at this point, for it is our conclusion that regardless of the type of fraud perpetrated by Crystal Clear, Inc., the appellee is not a holder in due course. Therefore, either type of fraud may be asserted not only against the payee, Crystal Clear, Inc., but also against the transferee, American Plan Corporation.

Section 1303.31, Revised Code, defines a holder in due course as one who, among other prerequisites, took the instrument "in good faith." In *Unico* v. *Owen* (1967), 50 N. J. 101, at 109, 232 A. 2d 405, 410, the court said:

"In the field of negotiable instruments, good faith is a broad concept. The basic philosophy of the holder in due course status is to encourage free negotiability of commercial paper by removing certain anxieties of one who takes the paper as an innocent purchaser knowing no reason why the paper is not as sound as its face would indicate. It would seem to follow, therefore, that the more the holder knows about the underlying transaction, and particularly the more he controls or participates or becomes in-

volved in it, the less he fits the role of a good faith purchaser for value; the closer his relationship to the underlying agreement which is the source of the note, the less need there is for giving him the tension-free rights considered necessary in a fast-moving, credit-extending commercial world."

The New Jersey court denied the status of holder in due course "where the financer maintains a close relationship with the dealer whose paper he buys; where the financer is closely connected with the dealer's business operations or with the particular credit transaction; or where the financer furnishes the form of sale contract and note for use by the dealer, the buyer signs the contract and note concurrently, and the dealer endorses the note and assigns the contract immediately thereafter or within the period prescribed by the financer." Cases cited are: *Industrial Credit Co.* v. *Mike Bradford & Co.* (Fla. App., 1965), 177 So. 2d 878; *International Finance Corp.* v. *Rieger* (1965), 272 Minn. 192, 137 N. W. 2d 172; *Local Acceptance Co.* v. *Kinkade* (Mo., 1962), 361 S. W. 2d 830; *Mutual Finance Co.* v. *Martin* (Fla., 1953), 63 So. 2d 649, 44 A. L. R. 2d 1; *Commercial Credit Corp.* v. *Orange County Mach. Wks.* (1950), 34 Cal. 2d 766, 214 P. 2d 819; *Commercial Credit Co.* v. *Childs* (1940), 199 Ark. 1073, 137 S. W. 2d 260, 128 A. L. R. 726.

See, also, *State Nat. Bank of El Paso, Tex.*, v. *Cantrell* (1943), 47 N. M. 389, 143 P. 2d 592, 152 A. L. R. 1216; *Buffalo Industrial Bank* v. *DeMarzio* (City Court, 1937), 162 Misc. 742, 296 N. Y. S. 783, reversed on other grounds (S. Ct., 1937), 6 N. Y. S. 2d 568; *First & Lumbermen's Nat. Bank* v. *Buchholz* (1945), 220 Minn. 97, 18 N. W. 2d 771.

See, also, Consumer Sales Financing, 102 U. Pa. Law Rev. 782, 789-790 (1954), and Curran, Legislative Controls as a Response to Consumer-Credit Problems, 8 B. C. Ind. and Com. L. Rev. 409 (1967). This line of authority is followed in *Davis* v. *Commercial Credit Corp.* (1950), 87 Ohio App. 311.

In *Local Acceptance Co.* v. *Kinkade* (Mo., 1962), 361 S. W. 2d 830, the court held that it was not necessary that

the financer know in advance of the execution of this specific note and of the contemporaneous execution of the particular contract. It was sufficient that the plaintiff knew in advance of any sales that they were to be made exclusively upon that method, and assented to the method. The Supreme Court of Minnesota reached the same result in *International Finance Corp.* v. *Rieger* (1965), 272 Minn. 192, 137 N. W. 2d 172.

There is conflicting authority in other jurisdictions. See 44 A. L. R. 2d 8 ((1955). However, in our opinion, the doctrine so well stated in *Unico* strikes the proper balance between the protection of the commercial need for negotiability and the individual's need for relief against fraud. As that court stated, we are impelled to ''join those courts which deny holder in due course status in consumer goods sales cases to those financers whose involvement with the seller's business is as close, and whose knowledge of the extrinsic factors— *i. e.*, the terms of the underlying sale agreement—is as pervasive, as it is in the present case.'' *Unico* v. *Owen* (1967), 50 N. J. 101, at 116, 232 A. 2d 405, at 413.

The judgment of the Common Pleas Court will be reversed, and the judgment of the Municipal Court will be affirmed.

*Judgment reversed.*

TROOP and HERBERT, JJ., concur.