## GAIL MARTINSON HOLT v. FIRST NATIONAL BANK OF MINNEAPOLIS AND OTHERS. DROVERS STATE BANK, RESPONDENT.

214 N. W. 2d 698.

November 2, 1973—No. 43708.

*Jardine, Logan & O'Brien* and *Michael J. Healey,* for appellant. *John F. Kelly,* for respondent.

PER CURIAM.

This appeal deals with the validity of a provision in an installment sales contract whereby the purchaser of an automobile waived as against the assignee of the contract defenses which could have been asserted against the assignor-seller. The trial court held that the assignment of the contract containing the waiver provision was unrelated to the actual sale of the automobile "in the usual sense" and that it was not "unconscionable"

to enforce the waiver in the peculiar circumstances of the case. We agree and affirm.

In May 1967, plaintiff, Gail Holt, purchased a Dodge Charger automobile from Herzog Dodge, Inc. (Herzog). The purchase price was $4,046.65 and was to be paid by cash in the sum of $3,415.15 and by the equity of $631.50 in a Dodge Dart which plaintiff traded for the balance. At the time of the sale, plaintiff's Dart was subject to a mortgage held by her credit union in the sum of $1,345.15.

Plaintiff looked to Herzog for assistance in financing the purchase of her new Charger. Herzog made appropriate arrangements with Drovers State Bank. The sale was consummated by plaintiff's executing an installment contract for $3,906. The contract was thereupon assigned to Drovers bank which issued its money order to Herzog for $3,415.15, the balance of the purchase price less the equity in the Dart.

Critical to the disposition of this case is the fact that plaintiff and Herzog, by prearrangement, agreed that Drovers bank was to pay Herzog an amount which included the full value of the Dart without any deduction for the balance of the mortgage owed plaintiff's credit union. Under its agreement with plaintiff Herzog was to satisfy the chattel mortgage on plaintiff's Dart. That arrangement, however, was not communicated to Drovers bank and they had no knowledge of the existence of the mortgage.

In performance of their agreement, Herzog drew a check to plaintiff's credit union in the sum of $1,345.15 and delivered it to the credit union. After it was deposited by the credit union, the check was dishonored by the First National Bank of Minneapolis on which it was drawn because that bank had unsecured loans made to Herzog which it believed to be in jeopardy. Consequently, the bank retained Herzog's deposits to secure its loans. Herzog thereafter was rendered insolvent and the chattel mortgage on plaintiff's Dart in the sum of $1,345.15, held by plaintiff's credit union, remained unsatisfied. By various assignments, both the mortgaged vehicle and the mortgage became the

property of Midway Dodge, which instituted suit against plaintiff to recover the amount then due on the mortgage. That action was consolidated with one brought by plaintiff against Drovers State Bank, the credit union, the First National Bank of Minneapolis, and Midway Dodge. The relief sought was to enjoin enforcement of the mortgage by Midway Dodge; to recover from Drovers $592.35 paid by plaintiff as part of the balance of the installment contract representing the $1,345.15 which Herzog should have paid to plaintiff's credit union; and to recover from each of the defendants except Midway Dodge $10,000 in damages including attorneys' fees.

The issue presented by the parties is whether the following language in the installment contract running from plaintiff to Herzog and assigned to Drovers bank is contrary to public policy and unenforceable:

"No agreement, promise or warranty not expressed herein and no defect in condition or quality of the Property shall bind or afford a defense against any assignee hereof."

Minn. St. 336.9—206(1) of the Uniform Commercial Code provides as follows:[1]

"(1) Subject to any statute or decision which establishes a different rule for buyers or lessees of consumer goods, an agreement by a buyer or lessee that he will not assert against an assignee any claim or defense which he may have against the seller or lessor is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense, except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument under the article on commercial paper (article 3). A buyer who as part of one transaction signs both a negotiable instrument and a security agreement makes such an agreement."

---

[1] That statute has been made inapplicable to consumer credit transactions by L. 1971, c. 275, § 2.

If the waiver is invalid, the Uniform Commercial Code makes the following section effective (§ 336.9—318[1] [a]) :

"(1)  Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in section 336.9—206 the rights of an assignee are subject to

"(a)  all the terms of the contract between the account debtor and the assignor and any defense or claim arising therefrom; * * *."

Finally, the Uniform Commercial Code makes this provision for dealing with unconscionable contracts (§ 336.2—302[1]) :

"(1)  If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

Plaintiff cites as authority for reversal a number of cases which have held waivers to be contrary to public policy. Unico v. Owen, 50 N. J. 101, 232 A. 2d 405 (1967) ; Dean v. Universal C. I. T. Credit Corp. 114 N. J. Super. 132, 275 A. 2d 154 (1971) ; Fairfield Credit Corp. v. Donnelly, 158 Conn. 543, 264 A. 2d 547, 39 A. L. R. 3d 509 (1969); Quality Finance Co. v. Hurley, 337 Mass. 150, 148 N. E. 2d 385 (1958).[2]

Although plaintiff sought relief against all of the parties to whom we have alluded, the issue has been narrowed to her right to deduct from the installment contract held by Drovers the sum of $1,345.15 included in that contract to satisfy her mortgage with the credit union.

Plaintiff seeks in these proceedings to invalidate application of Minn. St. 336.9—206 to consumer goods transactions as con-

---

[2] The cases dealing with the validity of waivers are exhaustively annotated at 39 A. L. R. 3d 518, 526.

trary to public policy. As we have indicated, the legislature has now made that portion of the Uniform Commercial Code inapplicable, in certain instances, in the following language (§ 325.941, subd. 2[a]):

"No contract or obligation relating to a consumer credit sale shall contain any provision by which:

"(a)   The consumer agrees not to assert against an assignee any claim or defense arising out of the transaction."

Since July 1, 1971, the effective date of § 325.941, subd. 2(a), lending agencies have been on notice of their obligation to scrutinize assignments in consumer transactions with the same degree of caution they would exercise in dealing directly with consumers were such agencies vendors. Drovers bank, in the instant case, had no such duty. Nor is there any evidence that Drovers and Herzog entertained the kind of relationship we held in International Finance Corp. v. Rieger, 272 Minn. 192, 137 N. W. 2d 172 (1965), deprived the lending agency of the protections accorded a holder in due course. We are not disposed to hold the statute contrary to public policy for all purposes. There may be fact situations which will justify that conclusion in particular cases. This is not one of them. Indeed, the claims of plaintiff are not directly related to a "consumer credit sale" on which the statutes focus.

The cases which are cited by plaintiff deal with a variety of contract breaches pertaining to goods sold. The conduct of the seller in each instance was manifestly "unconscionable." The waiver provisions which were set aside in those cases would have protected the assignees from defenses based on conduct which approached fraud. That is not the situation before us in this case. There is no suggestion that either Herzog or Drovers bank did not act in good faith. The bank had no information which should have put it on notice that plaintiff had delegated to Herzog the responsibility for satisfying her mortgage to the credit union out of the proceeds of the loan. While, of course, we recognize

the hardship which has resulted to plaintiff, it was brought about by a collateral arrangement which she herself made with Herzog in which the bank took no part and for which it had no responsibility. In effect, she designated Herzog her agent to satisfy an outstanding mortgage. Herzog became as to her simply a creditor in a fiduciary capacity. The situation is no different from what it would have been had the bank paid plaintiff the $1,345.15 and she had turned that sum over to Herzog with directions to satisfy the mortgage out of it. Where one of two innocent persons must assume the loss, it is not unconscionable to permit the person to suffer the loss who had knowledge of all the facts and was in a position to protect against the loss.

For the reasons indicated, we have concluded that the waiver-of-defenses clause in the case at hand is not unconscionable, and it was proper for the trial court to give it effect.

Affirmed.

MacLAUGHLIN, JUSTICE (dissenting).

I believe that this court should declare a waiver-of-defense clause such as the one involved in this case to be against the public policy of the State of Minnesota. The pertinent statute, Minn. St. 336.9—206(1), makes such clauses enforceable, subject however "to any statute or decision which establishes a different rule for buyers or lessees of consumer goods." I would accept the invitation to issue a decision of this court declaring such provisions in consumer transactions to be against public policy.

While some courts have upheld waiver-of-defense clauses, others have regarded such waivers to be at variance with state public policy. Annotation, 39 A. L. R. 3d 518, 522. Among those cases invalidating waiver-of-defense clauses in consumer transactions are Quality Finance Co. v. Hurley, 337 Mass. 150, 148 N. E. 2d 385 (1958); Unico v. Owen, 50 N. J. 101, 232 A. 2d 405 (1967); Toker v. Perl, 108 N. J. Super. 129, 260 A. 2d 244 (1970); Fairfield Credit Corp. v. Donnelly, 158 Conn. 543, 264 A. 2d 547, 39 A. L. R. 3d 509 (1969). Cf. Rehurek v. Chrysler Credit Corp. 262 So. 2d 452 (Fla. App. 1972). In Fairfield Credit

Corp. v. Donnelly, *supra,* the Connecticut Supreme Court held that a waiver-of-defense clause in an installment contract for a television set was void as against public policy and stated (158 Conn. 550, 264 A. 2d 550, 39 A. L. R. 3d 515):

"* * * [T]he use of a waiver of defense clause is an attempt to impart the attributes of negotiability to an otherwise non-negotiable instrument. [Uniform Commercial Code, § 3-104]. An attempt to evade the clear prerequisites of negotiability by the use of such clauses (often, as here, in fine print and couched in technical language the significance of which is difficult for the ordinary consumer to appreciate) is opposed to the policy and spirit of [Uniform Commercial Code, § 3-306], which provides that one not a holder in due course of an instrument is subject to all claims and defenses which would have been available against the original holder."

The Donnelly case also points out the policy of the Connecticut Legislature to protect purchasers of consumer goods from the impositions of overreaching sellers. I believe the same legislative goal exists in Minnesota. See, e.g., Minn. St. 325.78 to 325.80 (prevention of consumer fraud); 45.15 and 45.16 (establishing a consumer services section of the department of commerce); 325.92 (unsolicited goods deemed gifts); 325.94 and 325.941 (consumer credit sales). See, generally, c. 325.[1] Since there exists in Minnesota a strong public policy in favor of protecting purchasers of consumer goods, it is contrary to that policy for us to enforce a waiver-of-defense clause in a consumer-goods transaction.

The majority opinion states that the claims of plaintiff do not

[1] The most recent legislative session resulted in laws protecting a wide range of consumer interests. See, e.g., L. 1973, c. 264 (prohibiting odometer tampering); c. 383 (regulating hearing aid sales); c. 442 (requiring itemizing of funeral costs); c. 443 (regarding sales not made at seller's place of business); c. 467 (banning dangerous toys); c. 687 (requiring display of octane ratings); c. 692 (limiting disclaimer of implied warranties).

relate directly to a consumer credit sale. Inasmuch as her claims arise from an agreement made incident to the purchase of a new automobile pursuant to an installment sales credit contract which contained the waiver-of-defense clause, it seems clear to me that the sale was a consumer credit sale within the meaning of the code.

Further, I do not believe it is relevant that neither Herzog nor Drovers State Bank acted in bad faith or that Drovers bank did not have information which would have put it on notice that plaintiff delegated to Herzog the responsibility for satisfying her mortgage to the credit union out of the proceeds of the loan. Had the bank been on notice of the agreement, or acted in other than good faith, the waiver-of-defense clause would have been unenforceable under the express terms of Minn. St. 336.9—206(1), set forth in the majority opinion. The issue to be decided in this case is whether waiver-of-defense clauses should be against public policy in transactions involving consumer goods where the assignee takes his assignment for value, "in good faith and without notice of a claim or defense * * *." § 336.9—206(1).

Rather than decide this question on a case-by-case basis, I would take the prerogative left to this court by the legislature and abolish waiver-of-defense clauses in any transaction involving a buyer or lessee of consumer goods.

Because this case is nonprecedential in that our legislature has passed a statute invalidating a waiver of this kind,[2] I will not further enlarge upon my reasons for believing that we should declare such waivers against public policy. I would reverse.

---

[2] Minn. St. 325.941, subd. 3, which makes an assignee subject to any defenses the consumer has against the seller, is effective as to any consumer credit sale entered into on or after July 1, 1971. L. 1971, c. 275, § 3. The instant sale was in 1967.

O. RUSSELL OLSON, JUSTICE (dissenting).*

I concur in the dissent of Mr. Justice MacLaughlin. The court itself should declare such waivers against public policy; the legislature has now in its wisdom invalidated such waivers by enacting L. 1971, c. 275 (Minn. St. 325.94 and 325.941), effective July 1971, as the dissenting opinion indicates.

MR. JUSTICE KELLY and MR. JUSTICE TODD took no part in the consideration or decision of this case.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.